[No. D056808. Fourth Dist., Div. One. May 24, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN PAUL WYNN, JR., Defendant and Appellant.

COUNSEL

Kevin D. Sheehy, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Lilia E. Garcia and Arlene A. Sevidal, Deputy Attorneys General, for Plaintiff and Respondent.

---

**O**PINION

**IRION, J.**—A jury convicted John Paul Wynn, Jr., of one count of burglary (Pen. Code,[1] § 459); three counts of petty theft with priors (§ 666); one count of possession of a prohibited deadly weapon (§ 12020, subd. (a)(1)); and three counts of assault with a deadly weapon (§ 245, subd. (a)(1)). The jury also made a true finding that Wynn personally used a deadly or dangerous weapon in connection with the burglary and petty theft counts. (§ 12022, subd. (b)(1).) The trial court struck two of the petty theft counts and sentenced Wynn to prison for nine years four months.

██ Wynn contends that pursuant to section 654, the trial court was required to stay various portions of his sentence. He also contends that the abstract of judgment should be amended to accurately reflect that the trial court struck two of the petty theft counts. We conclude that (1) the trial court should have stayed the section 12022, subdivision (b)(1) sentence enhancement for use of a deadly or dangerous weapon in connection with the burglary count because it was based on the same indivisible course of conduct that gave rise to the assault with a deadly weapon counts; and (2) the abstract of judgment must be amended to reflect that the trial court struck two of the petty theft convictions (counts 3 & 4).

I

FACTUAL AND PROCEDURAL BACKGROUND

A loss prevention officer at a Wal-Mart store observed Wynn leave the store with a carton of cigarettes that he had not purchased. She confronted Wynn in the parking lot, told him she was a loss prevention officer, and asked him to come back inside the store. Wynn threw the carton of cigarettes down on the ground, stating, "I did not take anything. I don't know what you're talking about." He then took a nunchaku from his pants and started swinging it around. It took several store employees to subdue Wynn and place handcuffs on him. In the course of the struggle, Wynn inflicted a wound to one employee's head with the nunchaku. Two other employees sustained scratches and bruises while subduing Wynn.

Wynn was arrested and later told police that he carried the nunchaku because people are afraid of it.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

After a jury trial, Wynn was convicted of one count of burglary (§ 459); three counts of petty theft with priors (§ 666); one count of possession of a prohibited deadly weapon (§ 12020, subd. (a)(1)); and three counts of assault with a deadly weapon (§ 245, subd. (a)(1)). The jury also made a true finding that Wynn personally used a deadly and dangerous weapon in connection with the burglary and petty theft counts. (§ 12022, subd. (b)(1).) Wynn admitted a prior prison term. At sentencing, the trial court struck two of the petty theft counts.

The trial court sentenced Wynn to prison for nine years four months, which was based on the following consecutive terms: four years for one of the assault with a deadly weapon counts; one year each for the two other assault with a deadly weapon counts; eight months on the burglary count; one year for the weapon enhancement on the burglary count; eight months on the possession of a prohibited deadly weapon count; and one year for the prison prior.[2]

## II

## DISCUSSION

A. *Wynn's Contention That Portions of His Sentence Should Have Been Stayed Pursuant to Section 654*

Wynn contends that pursuant to section 654, three different portions of his sentence must be stayed, namely, (1) the sentence for burglary; (2) the sentence for possession of a prohibited deadly weapon; and (3) the enhancement for personally using a deadly or dangerous weapon in connection with the burglary.

■ Section 654, subdivision (a) provides in part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." "[S]ection 654 applies not only where there was but one act in the ordinary sense, but also where there was a course of conduct which violated more than one statute but nevertheless constituted an indivisible transaction. . . . If all the offenses were *incident to one objective*, the defendant may be punished for any *one* of such offenses but not for

---

[2] The trial court also imposed a sentence of two years on the remaining petty theft count, but stayed the sentence pursuant to section 654.

more than one." (*People v. Perez* (1979) 23 Cal.3d 545, 551 [153 Cal.Rptr. 40, 591 P.2d 63], citations omitted, italics added.) Whether offenses are "indivisible" for these purposes is determined by the "defendant's intent and objective, not the temporal proximity of his offenses." (*People v. Harrison* (1989) 48 Cal.3d 321, 335 [256 Cal.Rptr. 401, 768 P.2d 1078].) "If [a] defendant harbored 'multiple criminal objectives,' which were independent of and not merely incidental to each other, he may be punished for each statutory violation committed in pursuit of each objective, 'even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.' " (*Ibid.*) The application of section 654, thus, "turns on the *defendant's* objective in violating" multiple statutory provisions. (*People v. Britt* (2004) 32 Cal.4th 944, 952 [12 Cal.Rptr.3d 66, 87 P.3d 812] (*Britt*).) Where the commission of one offense is merely " 'a means toward the objective of the commission of the other,' " section 654 prohibits separate punishments for the two offenses. (*Britt*, at p. 953.)

We apply a substantial evidence standard of review. "The determination of whether there was more than one objective is a factual determination, which will not be reversed on appeal unless unsupported by the evidence presented at trial." (*People v. Saffle* (1992) 4 Cal.App.4th 434, 438 [5 Cal.Rptr.2d 648]; see also *People v. Osband* (1996) 13 Cal.4th 622, 730 [55 Cal.Rptr.2d 26, 919 P.2d 640] [approving substantial evidence standard of review as stated in *Saffle*].) "[T]he law gives the trial court broad latitude in making this determination." (*People v. Hutchins* (2001) 90 Cal.App.4th 1308, 1312 [109 Cal.Rptr.2d 643].)

1. *Section 654 Does Not Require the Sentence for the Burglary Count to Be Stayed*

Wynn contends that the sentence on the burglary count must be stayed because "the possession and use of the same deadly weapon underlying the burglary . . . and the assaults with the deadly weapon . . . stemmed from one 'course of conduct comprising an indivisible transaction.' " Wynn contends that his single intent and objective in committing both the burglary and the assaults was "committing a burglary and escaping."

During sentencing, the trial court expressly considered whether Wynn had separate objectives in committing the burglary and the assaults. The trial court found, "with respect to the second degree burglary conviction, I do find that that [*sic*] has a predominant independent objective than the assault with a deadly weapon in the commission of the theft outside the store." As we will explain, the trial court's finding is supported by substantial evidence.

According to the evidence at trial, Wynn walked out of the store with the carton of cigarettes and was then confronted by the loss prevention officer. After being asked to come inside the store by the loss prevention officer, Wynn threw down the carton of cigarettes and used the nunchaku. Accordingly, substantial evidence supports a finding that Wynn's objective during the *burglary* was to obtain the cigarettes, but his objective during the *assault* was to avoid being arrested for the theft. Indeed, during the assault Wynn no longer had the objective to obtain possession of the cigarettes, as shown by the fact that Wynn threw the carton of cigarettes on the ground before the assault and, according to eyewitness testimony, did not attempt to retrieve it. Thus, the assault could reasonably be viewed as having a separate objective from the burglary. (See *People v. Vidaurri* (1980) 103 Cal.App.3d 450, 465–466 [163 Cal.Rptr. 57] [substantial evidence supported a finding that a burglary of a department store and the subsequent assaults during an attempted escape from security guards outside the store were not part of one continuous, indivisible course of conduct]; *People v. Hooker* (1967) 254 Cal.App.2d 878, 880 [62 Cal.Rptr. 675] [§ 654 did not apply to counts for petty theft for store merchandise and battery on a peace officer who stopped defendant outside the store because the defendant's "objective in hitting [the police officer] was to avoid arrest, an objective which had no essential connection with the petty theft he had completed at an earlier time"].)[3]

Because substantial evidence supports a finding that Wynn had a different objective in committing the burglary than in committing the assault, section 654 did not require the trial court to stay the sentence on the burglary count.

2. *Section 654 Does Not Require That the Sentence for the Possession of a Deadly Weapon Count Be Stayed*

We next consider whether the sentence for the possession of a deadly weapon count (§ 12020, subd. (a)(1)) should be stayed under section 654 because it is based on the same conduct as the assault with a deadly weapon

---

[3] Wynn cites *People v. Guzman* (1996) 45 Cal.App.4th 1023, 1028 [53 Cal.Rptr.2d 67], and *People v. Perry* (2007) 154 Cal.App.4th 1521, 1527 [65 Cal.Rptr.3d 654], but we do not find them to be applicable. In both *Guzman* and *Perry*, counts for robbery and burglary were subject to the prohibition on multiple punishment in section 654 because the evidence in those cases established that the burglaries and robberies were committed with the common objective of successfully obtaining possession of the stolen item. Here, in contrast, substantial evidence supports a finding that Wynn committed the assault to avoid arrest instead of to obtain possession of the cigarettes. Wynn also cites *People v. Niles* (1964) 227 Cal.App.2d 749, 755 [39 Cal.Rptr. 11], in which section 654 was applied when the defendant assaulted a victim following a burglary with the intent to prevent the victim from contacting the police. We do not find *Niles*'s analysis persuasive, and we do not follow it here.

counts. Wynn contends that section 654 applies because "[p]ossession of the nunchakus, a deadly weapon, was an essential element of [the possession of a deadly weapon] offense" and "[c]ommitting an assault with the nunchakus, a deadly weapon, was an essential element of the [assault with a deadly weapon] offenses." He argues, "Possessing the weapon and committing the assaults with that weapon were all part and parcel of a single course of conduct constituting an indivisible transaction with a single objective— committing burglary and escaping without being apprehended with the aid of the nunchakus if necessary."[4]

■ Case law establishes the guidelines for applying section 654 in the context of a conviction for possession of a prohibited weapon. " '[W]here the evidence shows a possession distinctly antecedent and separate from the primary offense, punishment on both crimes has been approved. On the other hand, where the evidence shows a possession only in conjunction with the primary offense, then punishment for the illegal possession of the [weapon] has been held to be improper where it is the lesser offense.' " (*People v. Bradford* (1976) 17 Cal.3d 8, 22 [130 Cal.Rptr. 129, 549 P.2d 1225] (*Bradford*); see also *People v. Ratcliff* (1990) 223 Cal.App.3d 1401, 1408–1409 [273 Cal.Rptr. 253] (*Ratcliff*).)

■ Applying this rule, courts have determined that section 654 applies where the defendant obtained the prohibited weapon *during* the assault in which he used the weapon. (*Bradford, supra*, 17 Cal.3d at pp. 13, 22 [§ 654 applied to possession of a firearm and assault counts when the defendant took a police officer's firearm from him and used it to assault the officer]; *People v. Venegas* (1970) 10 Cal.App.3d 814, 821 [89 Cal.Rptr. 103] [no evidence that the defendant had possession of the firearm used in a barroom fight until the shooting took place, so that "[n]ot only was the possession physically simultaneous, but the possession was incidental to only one objective, namely to shoot [the victim]."].) However, section 654 has been found not to apply when the weapon possession preceded the assault. (*Ratcliff, supra*, 223 Cal.App.3d at p. 1413 ["[T]he defendant already had the handgun in his possession when he arrived at the scene of the first robbery. A justifiable inference from this evidence is that defendant's possession of the weapon was not merely simultaneous with the robberies, but continued before, during and after those crimes. Section 654 therefore does not prohibit separate punishments."].)

---

[4] The trial court specifically considered whether Wynn had a separate objective in committing the deadly weapon offense and the assault offenses. It found "an independent criminal intent" and thus did not apply section 654.

Here, a logical inference from the evidence is that Wynn possessed the nunchaku at the time he entered Wal-Mart, before the assaults occurred. Further Wynn admitted to police that he carried the nunchaku because people are afraid of it. Based on this evidence, the trial court could reasonably conclude that Wynn's possession of the nunchaku was " 'distinctly antecedent and separate from' " the offense of assault with a deadly weapon (*Bradford, supra*, 17 Cal.3d at p. 22), and it could properly impose separate punishment for those offenses without running afoul of section 654.

### 3. *Section 654 Required the Trial Court to Stay the Enhancement for Use of a Deadly and Dangerous Weapon During the Burglary*

Wynn also contends that the enhancement for use of a deadly and dangerous weapon (§ 12022, subd. (b)(1)), which was applied to the burglary count, must be stayed under section 654 because it is based on the same conduct as the assaults with a deadly weapon.[5]

The parties' briefing centers on the question of whether section 654 applies to a section 12022, subdivision (b)(1) enhancement.[6] The Attorney General concedes that if section 654 does apply, then the trial court should have stricken the sentence associated with the enhancement because Wynn "did not personally use the deadly weapon until he assaulted the Walmart employees."[7]

Our Supreme Court has established that section 654 does not apply to enhancements that are based on the *status* of the defendant, such as an enhancement for the fact that the defendant has served a prior prison term. (*People v. Coronado* (1995) 12 Cal.4th 145, 156–157 [48 Cal.Rptr.2d 77, 906 P.2d 1232] (*Coronado*).) However, as the parties acknowledge, our Supreme Court has not reached the issue of whether section 654 applies to enhancements, like the weapons enhancement at issue here, that are based on

---

[5] At sentencing, although not expressly mentioning section 654, defense counsel argued that the trial court should take into account that the same conduct gave rise to the section 12022, subdivision (b)(1) enhancement and the assault counts. The trial court rejected the argument, observing that the enhancement attached to the burglary count, not the weapon possession count.

[6] Section 12022, subdivision (b)(1) provides: "Any person who personally uses a deadly or dangerous weapon in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for one year, unless use of a deadly or dangerous weapon is an element of that offense."

[7] The jury was instructed with CALJIC No. 17.16 that "[t]he term 'personally used a deadly or dangerous weapon' . . . means the defendant must have intentionally displayed a weapon in a menacing manner or intentionally struck or hit a human being with it." As the Attorney General correctly observes, the only conduct that would satisfy this description is Wynn's use of the nunchaku after being confronted by the loss prevention officer. This is also the same conduct that gave rise to the assault with a deadly weapon counts.

the *circumstances of the crime* committed by the defendant.[8] (*People v. Rodriguez* (2009) 47 Cal.4th 501, 507 [98 Cal.Rptr.3d 108, 213 P.3d 647] ["We need not . . . decide whether section 654 applies to sentence enhancements that are based on the nature of the offense . . . ."]; *People v. Palacios* (2007) 41 Cal.4th 720, 728 [62 Cal.Rptr.3d 145, 161 P.3d 519] (*Palacios*) ["[W]e need not address the People's argument that section 654 generally does not apply to enhancements. We leave that question for another day."]; *People v. Oates* (2004) 32 Cal.4th 1048, 1066, fn. 7 [12 Cal.Rptr.3d 325, 88 P.3d 56] ["we need not address the People's argument that section 654 does not apply to enhancements . . ."]; *People v. Masbruch* (1996) 13 Cal.4th 1001, 1013 [55 Cal.Rptr.2d 760, 920 P.2d 705] ["[W]e have never held that section 654 applies to weapon enhancements. [Citations.] We need not and do not reach that issue in this case either."]; *Coronado, supra,* 12 Cal.4th at pp. 156, 157 [contrasting enhancements based on the "nature of the offender" with those based on "the circumstances of the crime" (italics omitted), and only reaching the issue of whether § 654 applies to an enhancement falling into the former category].)[9] That issue is squarely presented here, and we therefore address it.

We find the analytical approach employed by our Supreme Court in *Coronado* to be helpful in deciding whether an enhancement under section 12022, subdivision (b)(1) is subject to section 654's proscription against

---

[8] Further, our Supreme Court has noted that the issue is not settled in the courts of appeal. (*Coronado, supra,* 12 Cal.4th at p. 157.) Indeed, in a previous opinion we noted our own court's conflicting statements on the issue. (*People v. Ross* (1994) 28 Cal.App.4th 1151, 1157, fn. 9 [33 Cal.Rptr.2d 894] [" 'The appellate courts have disagreed on whether section 654 applies to enhancements. [Citations.]' [Citation.] [¶] This court's own decisions have gone from holding that '[s]ection 654 . . . is inapplicable to enhancements . . .' [citation] to a more recent holding that 'it is now well accepted that section 654 applies to enhancements. . . .' [Citations.] However, '[w]e need not decide this issue to resolve the specific question now before us.' "].)

[9] In *People v. Gonzalez* (2008) 43 Cal.4th 1118, 1123 [77 Cal.Rptr.3d 569, 184 P.3d 702], our Supreme Court included dicta in a footnote that might be read as indicating its views on whether section 654 applies to enhancements. In the course of discussing whether it is proper to stay rather than strike an enhancement when its imposition is statutorily barred, *Gonzalez* stated, "Although the trial court correctly stayed all of the prohibited firearm enhancements, it incorrectly issued those stays under section 654, which applies only to offenses punishable in different ways, not to prohibited enhancements committed in the commission of an unstayed offense." (*Gonzalez,* at p. 1123, fn. 5.) In making this statement, the court may have meant nothing more than that if another statutory provision (such as § 12022.53, subd. (f) in *Gonzalez*) *prohibits* the imposition of multiple enhancements for an offense, the trial court should rely on that statute rather than section 654 in staying the enhancement. However, the court may also have intended a broader statement that section 654 applies only to offenses, and not to enhancements. In light of our Supreme Court's subsequent statement in *People v. Rodriguez, supra,* 47 Cal.4th 501, that it was *not* deciding whether section 654 applies to sentence enhancements based on the nature of the offense (*People v. Rodriguez, supra,* at p. 507), we do not view the dicta in *Gonzalez* as having resolved the issue.

multiple punishment. The issue in *Coronado* was whether one of the "enhancements must be stricken because it was based upon a prior prison term that stemmed from one of the convictions used to elevate [the defendant's] current drunk driving charge to a felony under Vehicle Code [former] section 23175." (*Coronado, supra*, 12 Cal.4th at p. 150.) *Coronado* found persuasive the discussion in *People v. Rodriguez* (1988) 206 Cal.App.3d 517 [253 Cal.Rptr. 633], which reasoned that enhancements based on a prior prison term did not fall under the scope of section 654 because " '[s]ection 654 applies to an "act or omission," . . .' " but enhancements for a prior prison term " 'relate to the *status* of the recidivist offender engaging in criminal conduct, not to the conduct itself.' " (*Coronado*, at p. 157, quoting *People v. Rodriguez, supra*, at p. 519.) Referring to the language in section 654 making that statute applicable to "[a]n *act or omission* that is punishable in different ways" (§ 654, subd. (a), italics added), *Coronado* concluded that "[b]ecause the repeat offender . . . enhancement imposed here does not implicate multiple punishment of an *act or omission*, section 654 is inapplicable." (*Coronado*, at p. 158, italics added.)[10]

█ Following *Coronado*'s lead, we must determine whether the factual basis for the enhancement at issue is an "*act or omission* that is punishable in different ways." (§ 654, subd. (a), italics added.) If the factual basis for the enhancement is "an act or omission," the enhancement falls within the scope of section 654. Other courts, relying on *Coronado, supra*, 12 Cal.4th 145, have taken a similar approach. (See *People v. Arndt* (1999) 76 Cal.App.4th 387, 395–396 [90 Cal.Rptr.2d 415] [applying the analytical approach used in *Coronado* to conclude that § 654 applies to the bodily injury enhancements in Veh. Code, former § 23182 as they "concern[] the offender's criminal conduct" and " 'focus[] on what the defendant did when the current offense was committed' "]; *People v. Reeves* (2001) 91 Cal.App.4th 14, 56 [109 Cal.Rptr.2d 728] [relying on *Coronado*'s distinction between the types of enhancements that " 'go to the nature of the offender' " and those that " 'go to the nature of the offense' " to conclude that § 654 precludes the imposition of two great bodily injury enhancements for a single course of conduct].)

█ Here, the enhancement under section 12022, subdivision (b)(1) for personally using a deadly or dangerous weapon during the commission of the burglary is based on an *act or omission* performed by Wynn during the offense, namely, using the nunchaku. Accordingly, we conclude that the section 12022, subdivision (b)(1) enhancement falls within the scope of

---

[10] We note that recently, in the course of analyzing whether section 654 applies to the enhancement provided in section 12022.53, our Supreme Court found significance in the fact that section 654 uses the terminology "act or omission" (*ibid.*) and thus "prohibits multiple punishment per *act*" in contrast to section 12022.53 which "do[es] so per *crime.*" (*Palacios, supra*, 41 Cal.4th at p. 731.)

section 654. We stress that our decision is limited to the particular circumstances of this case. We address only whether section 654 applies to an enhancement for personally using a deadly or dangerous weapon during a crime (§ 12022, subd. (b)(1)) when the defendant is also convicted of a separate crime that arises out of the defendant's use of that deadly or dangerous weapon. We do not decide the broader issue of whether section 654 applies to *all* sentencing enhancements based on the nature of a defendant's criminal acts.

As we have explained, the Attorney General concedes that if section 654 applies to the sentencing enhancement at issue here, then the trial court was required to stay the one-year sentence for the section 12022, subdivision (b)(1) enhancement, as the conduct that gave rise to the enhancement was the identical conduct that gave rise to the assault convictions. We agree. The weapons enhancement was based on the same indivisible course of conduct as the assault with a deadly weapon counts, and thus, section 654 dictates that the sentence on the enhancement should be stayed. (See *Britt, supra,* 32 Cal.4th at p. 952.) Accordingly, we conclude that the trial court erred in failing to stay the one-year sentence for the section 12022, subdivision (b)(1) enhancement.

### B. *The Minute Order and Abstract of Judgment Must Be Corrected to Reflect That the Trial Court Struck Counts 3 and 4*

At the sentencing hearing the trial court stated that it was striking the two petty theft convictions (counts 3 & 4), instead of staying them, as Wynn committed only one theft. However, the minute order for the sentencing hearing erroneously stated that the "time imposed on Count[] 3" and the "time imposed on Count[] 4" was "stayed," rather than saying that those counts were stricken. The error carried over to the abstract of judgment, which indicated that consecutive middle terms were imposed on counts 3 and 4. Wynn contends that the abstract of judgment should be amended to reflect the trial court's order at the sentencing hearing that counts 3 and 4 were stricken.

Citing the principle that a trial court's oral sentence governs if it is different from what appears in a minute order or an abstract of judgment (see *People v. Mitchell* (2001) 26 Cal.4th 181, 185 [109 Cal.Rptr.2d 303, 26 P.3d 1040]; *People v. Farell* (2002) 28 Cal.4th 381, 384, fn. 2 [121 Cal.Rptr.2d 603, 48 P.3d 1155]; *People v. Mesa* (1975) 14 Cal.3d 466, 471 [121 Cal.Rptr. 473, 535 P.2d 337]), the Attorney General agrees that the abstract of judgment should be amended. We therefore order that the abstract of judgment must be amended to reflect that counts 3 and 4 were stricken.

## DISPOSITION

The trial court is directed to (1) modify the judgment to stay the one-year sentence enhancement for personally using a deadly or dangerous weapon (§ 12022, subd. (b)(1)) applied to the burglary conviction, and to amend the abstract of judgment accordingly; and (2) modify the abstract of judgment to state that counts 3 and 4 were stricken. The trial court shall forward to the Department of Corrections and Rehabilitation an amended abstract of judgment. In all other respects the judgment is affirmed.

Huffman, Acting P. J., and McIntyre, J., concurred.