Filed 7/1/13  P. v. Hardy CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E055057 |
| v. | (Super.Ct.No. RIF1103524) |
| TARIUS JAVAR HARDY, | **OPINION** |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  J. Thompson Hanks, Judge.  (Retired judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Reversed with directions.

Sharon M. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and James D. Dutton and Alana Cohen Butler, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant Tarius Javar Hardy broke a window to get into his girlfriend's apartment and, after entering her home, refused to allow her to leave the apartment to get medical help for cuts she sustained from the broken glass. He also confiscated her cellular telephone so she could not call the police. Defendant was convicted of false imprisonment, first degree burglary, dissuading a witness, and misdemeanor vandalism.

Defendant makes the following claims on appeal:

1. There was insufficient evidence presented to support his conviction of first degree burglary.

2. Evidence Code section 1109, on its face, violated his federal constitutional rights to due process of law and equal protection.

3. His sentences on false imprisonment and dissuading a victim should have been stayed pursuant to Penal Code section 654.

4. The trial court abused its discretion by sentencing him to the upper term for his conviction of burglary, in addition to imposing consecutive sentences on the false imprisonment and dissuading a victim convictions.

5. The trial court erred by refusing to consider or inquire into defendant's motion for a new trial and substitution of counsel, and the error requires remand to the trial court for further inquiry.

# I

## PROCEDURAL BACKGROUND

Defendant was found guilty by a jury of false imprisonment (Pen. Code, § 236)[1] (count 1); first degree burglary (§ 459) (count 2); dissuading a victim (§ 136.1, subd. (c)(1)) (count 3); and a misdemeanor charge of vandalism (§ 594, subd. (b)(2)(A)) (count 4).  In a bifurcated proceeding, after waiving his right to a trial, defendant admitted he had suffered two prior convictions for which he had served a prior prison term (§ 667.5, subd. (b)), he had committed one prior serious offense (§ 667, subd. (a)), and he had committed one prior serious or violent offense (§§ 667, subds. (c), (e)(1), 1170.12, subd. (c)(1)).

Defendant was sentenced to the upper term of 12 years on count 2, which was deemed the principal term.  On count 1, he received a sentence of one year four months.  On count 3, he received a sentence of six years.  All of the sentences were ordered to run consecutive to each other and were pursuant to section 667, subdivision (e)(1).  In addition, defendant was sentenced to two years for the prior prison terms plus five years for the prior serious offense.  Defendant received a total state prison sentence of 26 years 4 months.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

II

FACTUAL BACKGROUND

A. *Incident Occurring on July 15, 2011*

Andrea Haro and defendant began a romantic relationship in 2007. They broke up several times during their relationship. In December 2010, Haro moved into an apartment located on 12th Street in Riverside. For the first three weeks that she lived at the location, defendant lived with her. Defendant was not on the lease for the apartment and did not pay rent or any of the utilities.

On July 15, 2011, Haro was living in the apartment. Defendant was staying at the apartment on and off despite the fact they had officially broken up. They continued to have sexual relations. Defendant kept some of his clothes at her house, but they were in trash bags. Defendant did not have a key to the apartment; he gained access by Haro letting him into the apartment.

On that day, Haro worked until 3:00 p.m. On her way home, defendant called her on her cellular telephone; he wanted to see her. They met near her apartment, and he gave her $25 for the gas bill. They both went back to her apartment. Defendant told Haro to get dressed because he wanted to take her to a local bar. Haro told him that she did not want to go with him. Haro did not want to go because defendant was different when he was drinking. Defendant got angry and said he was going to go by himself. He said that he was going to find another woman to have sex with him. Haro told him to go ahead and do it but not to come back.

4

Defendant and Haro started to argue. He complained she did not care about him. Defendant grabbed his bags full of clothes. He eventually had Haro against a wall and was yelling at her. Haro tried to get her shoes on to leave, but defendant would not let her. He kept pushing her back up against the wall. He closed a window so no one could hear them. He pulled her to the floor.

Haro's knee was skinned from the carpet, and she was screaming for him to stop. Defendant covered her mouth so that no one could hear her scream. Defendant kept yelling, "Shut up. Shut up." Haro estimated defendant covered her mouth on and off for 15 minutes. Defendant and Haro argued over her cheating on him. Defendant eventually got up and got her a towel for her knee.

Defendant then sat down next to Haro and started crying. He told her that he was sorry. Haro told him she did not want to hear it. He then started asking her for her telephone. He said: "I know you're going to call the cops on me." Defendant emptied out the contents of her purse, looking for her telephone. Haro had the telephone on her person but did not tell him. Haro told him that it might be in her car. She put on her shoes, went to her car, got in, and drove away. Haro wanted to get away because she was afraid defendant was going to hurt her.

Haro did not call the police because she thought defendant had left her apartment and would not come back. Defendant called her and assured her he had left the apartment. He apologized. Haro told him that she never wanted to see him again. Haro went back to her apartment, and he was gone. Haro locked every door and window.

5

At around 10:00 or 10:30 p.m., Haro heard banging on her window. At the same time, she got a text from defendant saying he was out in front of her house. Defendant banged on the window for about five minutes and then stopped. Haro took a sleeping pill so she could sleep.

Haro woke up at 2:00 a.m. and heard a noise at her window. She opened the blinds and saw defendant standing outside trying to open the window. Haro yelled, "Get out of here," and tried to hold the window shut. In the process of defendant trying to open the window, it shattered. Haro was cut and started bleeding. As she was looking at her arm, defendant reached in the window and was able to reach the door handle and open it.[2] At trial, she still had a scar from the cut.

Haro immediately went to the bathroom to wash her cuts. Defendant followed her and was yelling at her about her not wanting to see him. Haro told defendant that she needed to go to the hospital. He responded that she "wasn't going to no fucking hospital." She begged defendant to let her go to the hospital, but he kept telling her no.

Haro had her telephone in her hand. Haro tried to keep it away from defendant, but he eventually grabbed it out of her hand. Defendant could not access her telephone because it was locked with a code. Haro went to her bedroom and was trying to put on her bra and shoes so she could go to the hospital. Defendant ripped the bra out of her hands. Haro was able to get her shoes on, but defendant would not allow her to leave.

---

[2] One of Haro's neighbors heard the glass breaking and observed a man enter her apartment by reaching in the window and opening the door.

Defendant gave Haro back her cellular telephone but stayed with her the entire time. She never tried to call the police once she had the telephone because she claimed that defendant would not let that happen.

Defendant and Haro ended up in the living room. Eventually, defendant either fell asleep or passed out. Haro ran to the restroom and called 911. She whispered to the dispatcher that she was at her house. She told the dispatcher that she was in the bathroom and that her boyfriend had broken into the house and was still in the house. Haro told the dispatcher he did not know that she was calling the police.

Riverside Police Officer Genaro Escobedo responded to Haro's 911 call at approximately 3:00 a.m. As Officer Escobedo and other officers approached the apartment, Officer Escobedo saw a screen from one of the windows on the ground. As he got closer to the apartment, he observed the broken window by the front door. Haro came to the door and opened it.

Haro appeared frightened. She pointed to the area where defendant was sleeping or passed out. Defendant appeared to be waking up and grabbed for Haro's leg. Defendant was arrested. He had a cut that appeared to be made by broken glass on his hand. He was uncooperative. He kept yelling at Haro. He was placed in the back of the patrol car and started kicking the windows. He also tried to kick open the door in an attempt to get out of the patrol car. He smelled of alcohol.

Haro did not have a home telephone; she only had her cellular telephone. Defendant had called her numerous times since this incident. She was afraid of him and

7

had obtained a restraining order. She no longer knew his limits or what he would do to her.

B. *Prior Incidents of Domestic Violence*

In March 2009, defendant and Haro had attended a birthday party. Defendant had been drinking. He got into an argument with Haro and her sister. He called Haro a "fat bitch." Haro told defendant she was going to take him home in order to get him out of the party. On the way home, Haro was talking on her telephone. Defendant grabbed it from her. He snapped it in half and threw it out on the freeway.

Haro got off the freeway in order to get defendant out of the car. When she stopped, he grabbed her keys and threw them out the window. Defendant and Haro were yelling at each other. He reached over and punched her in the head. Haro got out of the car and intended to walk away. Defendant chased after her and kicked her in the stomach. He grabbed her to pull her up and ripped her clothes. She dragged herself to the curb and vomited. Defendant ran off.

In May or June 2011, defendant stayed the night at Haro's house and woke up in a bad mood. They started arguing with each other. Haro decided to leave. She and her daughter got in her car. Defendant got on the hood of the car and would not let her leave. Defendant begged her to talk to him. Defendant then jumped off, kicked the door of her car, and then let her leave.

Defendant did not present any evidence.

8

III

SUFFICIENT EVIDENCE OF BURGLARY

Defendant contends the evidence was insufficient to prove that he committed burglary as there was insufficient evidence that he entered the apartment with the intent to commit a felony, e.g., to dissuade a witness and/or commit false imprisonment.

"Our task is clear. 'On appeal we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] The standard of review is the same in cases in which the People rely mainly on circumstantial evidence. [Citation.] "Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt. '"If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment."' [Citations.]" [Citation.]' [Citations.] The conviction shall stand 'unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]."' [Citation.]" (*People v. Cravens* (2012) 53 Cal.4th 500, 507-508.)

9

Burglary involves the act of unlawful entry accompanied by the specific intent to commit grand or petit larceny or any felony. (*People v. Montoya* (1994) 7 Cal.4th 1027, 1041.) The defendant must possess the requisite intent element at the time of entry. (*People v. Sparks* (2002) 28 Cal.4th 71, 85, fn. 17; *People v. Riel* (2000) 22 Cal.4th 1153, 1204.) Evidence of the intent required for burglary "is seldom established with direct evidence but instead is usually inferred from all the facts and circumstances surrounding the crime. [Citations.]" (*People v. Lewis* (2001) 25 Cal.4th 610, 643.) The intent element is proved "'[w]here the facts and circumstances of a particular case and the conduct of the defendant reasonably indicate his purpose in entering the premises is to commit larceny or any felony . . . .'" (*People v. Kwok* (1998) 63 Cal.App.4th 1236, 1245.) "Whether the entry was accompanied by the requisite intent is a question of fact for the jury." (*Ibid.*)

The jury was instructed on burglary, in part, that "[e]very person who enters any building with the specific intent to commit false imprisonment or dissuading a witness, a felony, is guilty of the crime of burglary . . . ." The jury was instructed on the definitions of the crimes of false imprisonment by violence or menace (§ 236) and dissuading a witness (§ 136.1, subd. (c)(1)).

A felony offense of false imprisonment requires that an individual be restrained of his or her liberty by the use of violence or menace. (*People v. Islas* (2012) 210 Cal.App.4th 116, 123.) "'Menace is a threat of harm express or implied by words or act. [Citations.]' [Citation.]" (*Ibid.*) "In order to prove the offense of witness intimidation in

10

violation of section 136.1, subdivision (c), . . . the prosecution must establish that the defendant had the specific intent to dissuade a witness from testifying." (*People v. Young* (2005) 34 Cal.4th 1149, 1211.)

Here, the evidence established that Haro and defendant had been in a fight earlier in the day. During that argument, defendant pushed her against the wall and would not allow her to leave the apartment. He closed a window and put his hand over her mouth for 15 minutes to keep her for screaming for help. Defendant told her that he knew she was going to call the police and wanted her telephone. Haro was able to get away by claiming it was in her car. Haro told defendant that she never wanted to see him again.

Later, defendant came to her apartment and started banging on her window. He texted her that he was outside her home. She refused to let him in the apartment. At 2:00 a.m., she heard defendant trying to open a window. Haro yelled at him to leave. He pushed against the window until it broke. Haro immediately ran to the bathroom. Defendant chased her to the bathroom, took her telephone, and would not let her leave the apartment. He wanted to confront her about her earlier text that she no longer wanted to see him.

Based on this evidence, the jury could infer that defendant intended, when he entered the apartment, to hold Haro against her will until she would talk to him about her earlier text that she was going to leave him. Moreover, by taking her telephone, he assured that she could not contact the police. His actions supported that he entered with the intent to falsely imprison Haro and keep her from calling the police.

11

His intent was also evidenced by the prior acts that he had committed against Haro. Evidence of defendant's prior acts of domestic violence against her were admissible to show his intent. (See *People v. Story* (2009) 45 Cal.4th 1282, 1297-1298.) Defendant had once before taken her telephone and thrown it out the window so she could not call the police. He also had jumped on the hood of her car so that she could not leave.

Defendant had a history of taking her telephone so she could not call the police and also had used force in the past so she could not leave. The jury could reasonably infer that when defendant entered Haro's apartment, he did so with the intent to immediately take her telephone so she could not call the police and that he intended to falsely imprison her until he was able to talk to her.

Based on the foregoing evidence, viewed in the light most favorable to the People, we conclude there was sufficient evidence to support defendant's conviction of burglary.

IV

EVIDENCE CODE SECTION 1109

Defendant contends that instructing the jury as to Evidence Code section 1109 violated his federal rights to due process of law and equal protection necessitating reversal of his conviction.

The jury was instructed as to Evidence Code section 1109 that "[e]vidence has been introduced for the purpose of showing the defendant was engaged in an offense involving domestic violence on one or more occasions other than that charged in the

12

case." The terms "domestic violence," "cohabitant," and "abuse" were defined for the jury. The jury was further advised: "If you find the defendant committed a prior offense involving domestic violence, you may, but are not required to, infer that the defendant had a disposition to commit other offenses involving domestic violence. [¶] If you find that the defendant had this disposition, you may, but are not required to, infer that he was likely to commit and did commit the crimes of which he is accused. [¶] However, if you find by a preponderance of the evidence that the defendant committed a prior crime or crimes involving domestic violence, that is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged offenses. [¶] If you determine an inference properly can be drawn from this evidence, this inference is simply one item for you to consider along with all other evidence in determining whether the defendant has been proved guilty beyond a reasonable doubt of the charged crime. [¶] You must not consider this evidence for any other purpose. [¶] Within the meaning of the preceding instruction, the prosecution has the burden of proving by a preponderance of the evidence that a defendant committed crimes other than those for which he is on trial. You must not consider this evidence for any purpose unless you find by a preponderance of the evidence that the defendant committed the other crimes. [¶] If you find other crimes were committed by a preponderance of the evidence, you are nevertheless cautioned and reminded that before a defendant can be found guilty of any crime charged, the evidence as a whole must persuade you beyond a reasonable doubt that defendant is guilty of that crime. [¶] Preponderance of the evidence means evidence that has more convincing

13

force that that opposed to it. If the evidence is so evenly balanced that you're unable to find that the evidence on either side of an issue preponderates, your finding on that issue must be against that party who had the burden of proving it. You should consider all of the evidence bearing upon every issue regardless of who produced it."

Defendant waived any objection to the instruction on the ground the instruction violated his federal constitutional rights because he did not raise a constitutional objection to Evidence Code section 1109 in the lower court. (Evid.Code, § 353, subd. (a); see also *People v. Bolden* (2002) 29 Cal.4th 515, 546-547.) Defendant recognizes this failure but insists we should review the claim because it would have been futile to object, and he raises a purely legal issue. We briefly review his claim.

Defendant acknowledges that the California Supreme Court has rejected a due process challenge to a closely analogous statute, Evidence Code section 1108. (*People v. Falsetta* (1999) 21 Cal.4th 903, 912-922.) Defendant disagrees with the reasoning in *Falsetta*. However, we must follow the case. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

He also acknowledges that our sister courts have rejected challenges to Evidence Code section 1109 based on both due process (*People v. Rucker* (2005) 126 Cal.App.4th 1107, 1120; *People v. Escobar* (2000) 82 Cal.App.4th 1085, 1095-1096; *People v. Hoover* (2000) 77 Cal.App.4th 1020, 1028-1029 [Fourth Dist., Div. Two]) and equal protection (*People v. Price* (2004) 120 Cal.App.4th 224, 240; *People v. Jennings* (2000)

14

81 Cal.App.4th 1301, 1310).  We find these opinions well reasoned, and we are persuaded to follow them.

We conclude that Evidence Code section 1109 is not unconstitutional on its face.

V

SECTION 654

Defendant contends the trial court erred by imposing consecutive sentences on counts 1 and 3, his convictions for false imprisonment and dissuading a victim.  He claims the trial court should have stayed the sentences on these counts pursuant to section 654 because he possessed the same intent in committing the burglary in count 2.  The People concede that his sentence on count 1, false imprisonment, should have been stayed.  However, the People insist that count 3, dissuading a witness, was properly ordered to run consecutive to count 2.

Section 654, subdivision (a) states:  "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."  Section 654 applies not only to the same criminal act, but also to an indivisible course of conduct committed pursuant to the same criminal intent or objective.  (*People v. Latimer* (1993) 5 Cal.4th 1203, 1207-1209.)

""""Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the *intent and objective*

15

of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.'" [Citation.]" (*People v. Green* (1996) 50 Cal.App.4th 1076, 1084.) A defendant's intent and objective are factual determinations for the trial court, and those determinations must be upheld if supported by substantial evidence. (*Id.* at p. 1085.)

At the time of sentencing, the trial court imposed on count 1 the midterm doubled, and ordered it to run consecutive to count 2, but gave no reason for the consecutive sentence. As for count 3, the trial court imposed the midterm doubled and ordered it to run consecutive to count 1 because "[i]t is a separate incident, separate conduct involving a separate time and place."

Generally, if the defendant commits both burglary and the underlying intended felony, section 654 will permit punishment for one or the other but not for both. (See *People v. Price* (1991) 1 Cal.4th 324, 492 [burglary and intended murder]; *People v. Centers* (1999) 73 Cal.App.4th 84, 98-99 [Fourth Dist., Div. Two] [burglary and kidnapping].)

Here, the jury was instructed that the underlying felonies that defendant had the intent to commit when he made entry into the residence was both false imprisonment or dissuading a witness. The jury was instructed, in pertinent part, that "[e]very person who enters any building with the specific intent to commit false imprisonment or dissuading a witness, a felony, is guilty of the crime of burglary . . . ." In closing argument, the People argued that he possessed both intents when he entered the home. The jury found him

16

guilty of both underlying felonies. Based on the instructions and argument of the People, at the time of entry, defendant possessed the intent to either falsely imprison Haro or dissuade her from calling the police, or both. Since defendant's commission of the three crimes had the same intent and objective, they could not be sentenced consecutively.

The People argue that the trial court could conclude that when defendant entered Haro's residence, he only possessed the intent and objective to falsely imprison her. However, the prosecutor below chose either crime as the underlying felony to prove burglary and there was no unanimity instruction for the burglary charge. Hence, if some of the jurors concluded that defendant formed the intent to commit the crime of dissuading a victim as the underlying felony for burglary, we would be required to reverse his burglary conviction under the theory advanced by the People on appeal.

The People rely upon *People v. Williams* (1984) 157 Cal.App.3d 145 and *People v. Wynn* (2010) 184 Cal.App.4th 1210 to support their claim that defendant had separate intents and objectives.

In *People v. Wynn, supra,* 184 Cal.App.4th 1210, the defendant entered a store and took cigarettes. Once he left the store, he was confronted by a loss prevention officer. The defendant threw down the cigarettes and attacked the loss prevention officer with a nunchaku. (*Id.* at p. 1216.) He was convicted of burglary and several assault counts. The *Wynn* court found that the defendant could be sentenced on both the burglary and the convictions involving assault with a deadly weapon because the burglary involved the desire to take cigarettes and the assault on the loss prevention officer was in order to

17

avoid arrest. It concluded: "Because substantial evidence supports a finding that [the defendant] had a different objective in committing the burglary than in committing the assault, section 654 did not require the trial court to stay the sentence on the burglary count." (*Ibid*.)

In *People v. Williams, supra,* 157 Cal.App.3d 145, the defendant entered the victim's home through an open window. He took a television from a room in which an 11-year-old girl was sleeping. He started to leave the room with the television when the girl awoke. He then raped the girl, and she was found dead the next morning. (*Id*. at p. 157.) The appellate court discerned that defendant had two criminal objectives, first being the theft of the television and second being the rape. (*Ibid.*) It concluded that multiple punishment was not barred by section 654. (*Id.* at p. 158.)

The facts of *Wynn* and *Williams* clearly differ from this case. Here, the People proceeded on the theory that defendant entered Haro's apartment either to falsely imprison her or dissuade her from calling the police, or both. In the above cases, it is clear that when committing the entry into the store and home, the defendants in those cases had an intent to steal. The later decision to fight off the loss prevention officer in *Wynn* and to rape the 11-year-old girl in *Williams* clearly were separate objectives.

The People also claim that defendant followed Haro into the bathroom and then took her cellular telephone. When they moved to the bedroom, he gave the telephone back to her. They insist that defendant had abandoned his intent to dissuade her from calling the police but he continued to falsely imprison her. Part and parcel of the false

18

imprisonment was that Haro could not contact the police.  She explained she did not call the police because she knew he would not let her and because he had broken her telephone in the past.  There simply is no evidence that defendant's intent and objective in committing burglary, false imprisonment, and dissuading a victim had separate intents and objectives.

Based on the foregoing, the trial court erred by imposing consecutive sentences on counts 1 and 3.  We will order the trial court to stay the sentences pursuant to section 654.

VI

UPPER TERM AND CONSECUTIVE SENTENCES

Defendant additionally argues in his opening brief that the trial court erred by imposing an upper term sentence on count 2 and consecutive sentences on counts 1 and 3.  In light of our determination that the trial court erred by imposing sentences on counts 1 and 3, rather than staying them pursuant to section 654, his argument that the court erred by choosing consecutive rather than concurrent sentences is no longer applicable.  Moreover, defendant appears to concede in his opening brief that imposition of the upper term on count 2 was supported by aggravating factors.  Out of an abundance of caution, we briefly review the validity of the upper term on count 2.

In sentencing on count 2, as the principal term, the trial court stated that it had considered the aggravating and mitigating circumstances in the probation report.  It stated:  "In aggravation, the crime involved great violence, great bodily harm, the threat of great bodily harm, and exposed a high degree of cruelty, viciousness, and callousness.

19

The manner in which this crime was carried out indicated planning, sophistication, and professionalism. The defendant engaged in violent conduct that indicates a serious danger to society. The defendant's prior convictions as an adult, sustained since a juvenile, are numerous and are increasing in seriousness. He has served a prior prison term, and his prior performance on probation and parole was unsatisfactory." The trial court found no mitigating factors.

"'Sentencing courts have wide discretion in weighing aggravating and mitigating factors . . . .'" (*People v. Avalos* (1996) 47 Cal.App.4th 1569, 1582.) "[A] trial court is free to base an upper term sentence upon any aggravating circumstance that the court deems significant, subject to specific prohibitions. [Citations.] The [trial] court's discretion to identify aggravating circumstances is otherwise limited only by the requirement that they be 'reasonably related to the decision being made.' [Citation.]" (*People v. Sandoval* (2007) 41 Cal.4th 825, 848, fn. omitted.) "In making such sentencing choices, the trial court need only 'state [its] reasons' [citation]; it is not required to identify aggravating and mitigating factors, apply a preponderance of the evidence standard, or specify the 'ultimate facts' that 'justify[ ] the term selected.' [Citations.] Rather, the court must 'state in simple language the primary factor or factors that support the exercise of discretion.' [Citation.]" (*Id*. at pp. 850-851.)

A single factor in aggravation is sufficient to justify the upper term. (*People v. Cruz* (1995) 38 Cal.App.4th 427, 433.) We review the trial court's sentencing decision

for an abuse of discretion.  (*People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 977-978.)

Here, the aggravating factors were properly considered by the trial court.  Briefly, defendant broke the window at Haro's apartment, causing her to bleed and believe that she needed to go to the hospital.  She was left with a permanent scar.  This showed that the crime involved great violence and great bodily harm (Cal. Rules of Court, rule 4.421(a)(1)) and that he engaged in violent conduct which was a serious danger to society (Cal. Rules of Court, rule 4.421(b)(1)).  Additionally, just based on the prior convictions admitted by defendant in this case supported the upper term.  (Cal. Rules of Court, rule 4.421(b)(2), (b)(3).)  There were ample aggravating factors and no mitigating factors to support the upper term on count 2.

Even if the trial court erred in relying on one or more of the above contested factors, any error was harmless.  "'When a trial court has given both proper and improper reasons for a sentence choice, a reviewing court will set aside the sentence only if it is reasonably probable that the trial court would have chosen a lesser sentence had it known that some of its reasons were improper.'  [Citation.]" (*People v. Cruz, supra,* 38 Cal.App.4th at pp. 433-434.)  We find no error and further no reasonable probability defendant would have been given a lesser sentence.

# VII

## MOTION FOR NEW TRIAL

Defendant contends this case must be remanded for a careful inquiry concerning his claim of ineffective representation by his trial counsel that he presented in a motion for new trial that the trial court lodged but did not consider and whether or not he should be appointed substitute counsel to investigate the claim for a motion for new trial.

A. *Additional Factual Background*

At the time of sentencing, defendant's counsel informed the trial court that defendant wanted to file a motion for new trial. Defense counsel stated, in referring to the motion prepared by defendant, "Yes. That I would also like you to have an opportunity to review." The trial court stated that it would not read it but agreed to lodge it. The trial court then proceeded to sentencing. Defendant's counsel stated: "Your Honor, I do want to be heard in that regard as far as sentencing goes, but I know that [defendant] would like Your Honor to consider his motion for a new trial and have an opportunity to read that. And I'm sure [defendant] has some issues that he would like to point out to Your Honor with regard to that motion for a new trial." The trial court responded: "Well, [defendant] is not the attorney of record in this case, and it's my philosophy not to accept motions from people who are not attorney of record. So I will lodge it, but I'm not going to consider it. Now, if he would like to say something at the sentencing hearing, he can do that. Anything he wants to express about sentencing, fine."

22

Defendant's counsel conferred with defendant and then advised the trial court that defendant was not requesting to make a statement. Neither defendant nor his trial counsel divulged to the judge in open court the grounds for the motion for new trial or make an oral request for substitution of counsel.

In the motion filed with the trial court, which defendant had prepared, he raised several claims.[3] He presented two claims that his due process rights and sixth amendment rights to a fair hearing were violated when the motion was denied because a lesser offense than burglary was committed and because the dissuading a witness charge was filed after the preliminary hearing. He further raised a claim of ineffective assistance of counsel based on his counsel not requesting a continuance or that a warrant be issued for witnesses, not requesting a mistrial, and failing to request a jury instruction. He also claimed that the trial court improperly failed to instruct the jury on the lesser offense of aggravated trespass.

In his "Prayer for Relief" defendant requested that an order to show cause be issued, *appointment of counsel*, dismissal or modification of the charges, and other relief that the trial court deemed fair and appropriate.

---

[3] The clerk's transcript contained an illegible copy of the motion. Defendant's counsel on appeal provided a legible copy of the new trial motion, and we took judicial notice of the motion on July 9, 2012.

B. *Analysis*

In *People v. Smith* (1993) 6 Cal.4th 684, the California Supreme Court affirmed that a defendant is entitled to raise the claim of ineffective assistance of counsel in a motion for new trial and thus is entitled to substitution of counsel posttrial upon a "proper showing." (*Id.* at pp. 692–693, 695; see also *People v. Fosselman* (1993) 33 Cal.3d 572, 582.) The *Smith* court explained that, "'[i]f the claim of inadequacy relates to courtroom events that the trial court observed, the court will generally be able to resolve the new trial motion without appointing new counsel for the defendant. [Citation.] If, on the other hand, the defendant's claim of inadequacy relates to matters that occurred outside the courtroom, and the defendant makes a "colorable claim" of inadequacy of counsel, then the trial court may, in its discretion, appoint new counsel to assist the defendant in moving for a new trial. [Citations.]' [Citation.]" (*Smith,* at pp. 692-693.) However, the court emphasized that new counsel should only be appointed if a proper showing of ineffective assistance of trial counsel has been shown through inquiry by the trial court of defendant and his trial counsel. (See, e.g. *Smith,* at pp. 695-696; *People v. Stewart* (1985) 171 Cal.App.3d 388, 396-397, disapproved of on other grounds in *Smith,* at pp. 693-694, 696.)

In *People v. Stewart, supra,* 171 Cal.App.3d at pp. 396-398, the defendant's attorney of record, at the behest of the defendant, filed a motion for new trial on the basis of his own incompetency. At a hearing on the motion, the trial court asked the defendant and his counsel to divulge the basis for the claim of incompetence. ( *Stewart,* at pp. 393,

24

397.) At an in camera hearing, the defendant stated that he was inadequately represented when counsel failed to call his personal doctor and "'two witnesses up on the fourth floor.'" (*Id*. at p. 394.) With respect to the latter two witnesses, the trial court failed to question the defendant about their expected testimony. (*Id*. at p. 398.) The reviewing court reversed and remanded the case because it reasoned: "The trial court did not inquire into the substance of the witnesses' expected testimony, but instead denied the motion without endeavoring to learn whether the testimony might have been material or even crucial and without appointing new counsel to assist the court in this regard. We believe this constituted error. 'A trial judge is unable to intelligently deal with a defendant's request for [a new trial on the basis of trial counsel's incompetence or for] substitution of attorneys unless he is cognizant of the grounds which prompted the request.' [Citation.] A denial of appellant's motion for new trial based on ineffective representation without careful inquiry into the defendant's reasons for claiming incompetence '"is lacking in all the attributes of a judicial determination." [Citations.]' [Citation.]" (*Ibid.*)

When a defendant with appointed counsel seeks new counsel on the grounds of inadequate representation, the court must allow the defendant to explain the bases for his contentions and describe specific instances of ineffective representation. (*People v. Marsden* (1970) 2 Cal.3d 118, 124 (*Marsden*).) However, a defendant must make a "'clear indication'" that he wants to substitute his attorney in order to be entitled to a

25

*Marsden* hearing. (*People v. Sanchez* (2011) 53 Cal.4th 80, 89-90; see also *People v. Richardson* (2009) 171 Cal.App.4th 479, 484.)

Here, defendant filed a motion for new trial based on ineffective assistance of counsel and specifically requested in his prayer for relief that he be appointed counsel. Counsel for defendant in open court stated he and defendant wanted the trial court to review the new trial motion. Neither trial counsel nor defendant stated in open court the basis for the motion, and defendant did not explicitly state that he was requesting substitute counsel. The trial court did not consider the written motion for new trial because defendant was not counsel of record. If the trial court had read the motion for new trial, it would have been clear from the motion that he was making a motion for new trial based on ineffective assistance of counsel and that in his prayer for relief he sought to be appointed new counsel.

Defendant has provided no case, and we have not found one, that holds a request in the prayer for relief in a motion for new trial for appointed counsel is a "clear indication" of a request to substitute counsel. However, we need not resolve the issue. Here, at the very least, the trial court should have considered the motion for new trial to determine if it presented grounds for a new trial or substitution of counsel to present the claim. We certainly do not purport to hold that the trial court is obligated to review every document that is presented to it by a defendant when he has appointed counsel. However, here, counsel asked that the trial court consider the motion for new trial on two separate occasions in open court. Defendant did what he could to make his claims for a

26

motion for new trial be known, but they were ignored by the trial court. The trial court erred by failing to make a further inquiry into defendant's request to file a motion for new trial. If the trial court here had reviewed the motion for new trial, it may have easily resolved the issues raised in the motion. It may not have had to substitute counsel if it could resolve the issue simply by reviewing the new trial motion and making its decision based on its courtroom observations. (See *People v. Smith, supra,* 6 Cal.4th at pp. 692-693.)

Having determined that there was an inadequate inquiry into defendant's request for a motion for new trial, the final question before us is whether the trial court's error was prejudicial. (*People v. Braxton* (2004) 34 Cal.4th 798, 818 [court's refusal to hear motion for new trial is harmless error if record on appeal allows reviewing court to determine as a matter of law the motion lacked merit or the trial court properly exercised its discretion to deny it].)

Here, although defendant filed his motion for new trial, he was not given the opportunity to explain his motion or his reasons for appointment of counsel to pursue his claims. The People claim defendant was not prejudiced by the inadequate inquiry because the trial court would not have granted the motion for new trial. They insist the evidence that defendant would have produced -- that his counsel failed to call witnesses -- would not have warranted the granting of a new trial. The People base this conclusion on the pretrial proceedings. Prior to trial, the trial court inquired of defense counsel if there would be any defense witnesses. Defendant's counsel responded, "I am

27

anticipating these three, although none of them did show up on their subpoena today, . . . I heard from Gloria Hernandez. I didn't hear from the other two. I was going to try to call them and see what their deal is. They live in the apartment complex that the incident occurred in. [¶] I understand that she is saying that their testimony is irrelevant as to whether defendant resided at the residence; however, they will testify that they saw him there every day." Defendant also stated that the neighbors hated him. Defense counsel represented that they were impeachment witnesses to show that defendant lived in the apartment and that he was there on a daily basis. The People claim this evidence would not have helped defendant.

However, we cannot speculate, based on the record before us, as to defendant's exact claims. The trial court's failure to conduct a further inquiry has resulted in a record which does not explain whether defendant actually was complaining about the above witnesses or other witnesses. It also does not address the instructional error claims or the claim for mistrial. Despite the filing of the motion for new trial by defendant, his claims are not entirely clear and he was not given a chance to explicate those reasons. As stated in *People v. Braxton, supra,* 34 Cal.4th at page 819, "when, as here, a trial court has refused to hear a defendant's new trial motion, and the appellate record is insufficient to permit a reviewing court to determine as a matter of law whether the proposed motion was meritorious, the reviewing court may remand the matter to the trial court for a belated hearing of the new trial motion, absent a showing that a fair hearing of the motion is no longer possible." As such, the appropriate remedy is remand for further inquiry by

28

the trial court into defendant's complaints about his trial counsel and other issues raised in the new trial motion.  If possible, the court may rule on the motion for new trial without substituting new counsel; if not, it may determine if substitute counsel should be appointed to file a new trial motion.[4]

VIII

DISPOSITION

The judgment is conditionally reversed and the matter is remanded with the following directions:  (1) The court shall hold a hearing on defendant's motion for new trial; (2) if the court finds that defendant has made a proper showing of ineffective assistance of trial counsel, it can either grant the motion for new trial or appoint new counsel to represent defendant and entertain a motion for a new trial if newly appointed counsel files one; and (3) if newly appointed counsel makes no new trial motion, if no counsel is appointed and the trial court denies the motion for new trial, or the new trial motion filed by substitute counsel is denied,the court shall reinstate the judgment.

---

[4] We note that in the recent California Supreme Court case of *People v. Cornwell* (2005) 37 Cal.4th 50, the California Supreme Court felt that remand was not the appropriate remedy when substitution of counsel to file a motion for new trial was denied because the issues raised in the request for new trial or substitution of counsel consisted of facts outside the record.  As such, a petition for habeas corpus was the appropriate remedy.  (*Id.* at pp. 100-101.)  However, in that case, the trial court had inquired of the defendant about his claims and it was clear they all pertained to matters outside the record.  (*Id.* at p. 101.)  Here, the trial court made no inquiry, and it is not clear from the record that all of the claims are outside the record on appeal or not based on the trial court's observations.  Remand is the appropriate disposition in this case.

In the event of reinstatement of the judgment, we order that the sentences on counts 1 (false imprisonment) and 3 (dissuading a witness) be stayed pursuant to section 654. The minute order from sentencing and the abstract of judgment shall be modified. A copy of the corrected abstract of judgment shall be forwarded to the California Department of Corrections and Rehabilitation. In all other respects, the judgment, if reinstated, is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI
Acting P. J.

We concur:

KING
J.

MILLER
J.

30