Filed 5/29/15  P. v. Butts CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> ROLANDO LOUIS BUTTS et al., <br><br> Defendants and Appellants. | D065066 <br><br><br><br> (Super. Ct. No. SCD245797) |


APPEALS from judgments of the Superior Court of San Diego County, Albert T. Harutunian III, Judge.  Affirmed as modified.


Patrick M. Ford, under appointment by the Court of Appeal, for Defendant and Appellant Rolando Louis Butts.

Esther K. Hong, under appointment by the Court of Appeal, for Defendant and Appellant Willie Deshawn Brown, Jr.

Sheila Quinlan, under appointment by the Court of Appeal, for Defendant and Appellant Christopher Kennison.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton, Warren Williams and Minh U. Le, Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

A jury convicted Rolando Louis Butts, Willie Deshawn Brown, Jr., and Christopher Kennison of conspiracy to commit a crime (Pen. Code,[1] § 182, subd. (a)(1); count 1), robbery (§ 211; count 2), and simple battery (§ 242) [as a lesser included offense of battery causing serious bodily injury (§ 243, subd. (d))]; count 3). The trial court sentenced Butts to three years in state prison, consisting of the middle term of three years for count 2 and a concurrent middle term of three years for count 1, which the court stayed under section 654. The court did not sentence Butts for count 3; however, the court sentenced him to a concurrent term of 16 months in a separate probation revocation case. The court sentenced Brown to three years in state prison, consisting of the middle term of three years for count 2, a concurrent middle term of three years for count 1, which the court stayed under section 654, and a concurrent term of 180 days for count 3. The court sentenced Kennison to two years in state prison, consisting of the lower term of two years for count 2, a concurrent lower term of two years for count 1, which the court stayed under section 654, and a concurrent term of 180 days for count 3.

---

[1]     Further statutory references are also to the Penal Code unless otherwise stated.

Butts appeals, contending the court erred in admitting one of his codefendant's statements, denying his motion to sever his trial from his codefendants' trial, and allowing the prosecutor to use his and his codefendants' booking photographs during opening argument. He further contends the accumulation of these errors deprived him of due process of law and a fair trial.

Brown and Kennison also appeal, contending their abstracts of judgment must be corrected to show the trial court stayed their sentences for count 1. They additionally contend the court should have stayed their sentences for count 3 and their restitution fines must be reduced to reflect the stayed sentences. The People concede Brown's and Kennison's abstracts of judgment must be corrected as to count 1 and their restitution fines must be reduced, but contend we must order the imposition of an additional restitution fine for their convictions for count 3.

We are unpersuaded by Butts's contentions; however, we requested and received supplemental briefing from him and the People on whether the trial court erred by failing to sentence him for count 3. We also requested and received supplemental briefing from him and the People on whether any sentence for count 3 should be stayed and whether the court correctly calculated the amount of the restitution and parole revocation fines it imposed on Butts.

We conclude the trial court erred in failing to sentence Butts for count 3 and we remand the matter for sentencing as to that count. We further conclude Brown's and Kennison's sentences for count 3, as well as the sentence Butts will receive for count 3, must be stayed as there is insufficient evidence the battery was independent from, rather

3

than incidental to, the robbery. We also conclude the restitution and parole revocation fines imposed in this case must be reduced to reflect the stayed sentences in counts 1 and 3. Finally, as to Butts, we conclude the court erroneously imposed a second restitution fine in the probation revocation case and the parole revocation fine it imposed in that case must be reduced. We affirm the judgment in all other respects.

## BACKGROUND

The victim sold medical marijuana. Brown contacted the victim through e-mail, phone calls, and text messages seeking to buy medical marijuana. After Brown e-mailed the victim his identification information and prescription, the two men arranged to meet at a large strip mall where Brown would purchase two pounds of marijuana from the victim for $5,250.

The next day, the victim arrived at the strip mall, parked his truck, and sent Brown a message informing Brown where he parked. Brown approached the victim's truck on foot, carrying a backpack. Brown sat in the front passenger seat of the victim's truck and showed the victim his driver's license and prescription for marijuana, which the victim set about photographing. At Brown's request, the victim gave Brown some sample marijuana packages to inspect. Brown took out a small scale from his backpack and attempted to weigh the amount; however, his scale was too small for the task.

Suddenly, Kennison opened the driver's side door of the victim's truck and said, "Yeah, this is happening, we're taking your shit." The victim looked over to Brown, who nodded and smiled while pointing a gun at him.

4

The victim pushed Kennison away from the driver's side door, got out of the truck, and walked around the back to the passenger side door. He saw Butts and an unidentified man rapidly advancing toward him in an aggressive manner. Brown got out of the truck, taking his backpack, the victim's cell phone and the sample marijuana packages with him. Brown joined Kennison, Butts, and the unidentified man in surrounding the victim. Kennison approached the victim as Brown and the other men went into the back of the victim's truck and took the rest of the victim's marijuana packages. The victim struggled, but the men overcame his struggles, tackled him to the ground, and struck him in the face. Though the victim tried to hold on to Brown, the other men freed Brown and they all fled, carrying the victim's marijuana with them.

The victim chased them and saw them get into an awaiting green sedan and quickly drive away. He ran back to his truck, wrote down the license plate number of the sedan, and borrowed a stranger's phone to call 911.

When a police officer arrived, the victim described the four men to the officer. Approximately an hour later, other law enforcement officers spotted and stopped the green sedan. Butts, another male passenger, and the female driver were in the car.[2] Butts had the victim's cell phone and the officers found some of the victim's marijuana in the trunk of the sedan.

The victim identified Brown, Butts, and Kennison at trial. The victim also identified Butts during an in-field lineup.

---

2    Although the driver and the male passenger were tried along with Brown, Butts, and Kennison, the jury acquitted the driver and the male passenger of all charges.

During the incident, the victim suffered several facial injuries, including a black eye and a chipped tooth.  He also suffered injuries to his left shoulder and knees.

DISCUSSION

I

*Failure to Exclude Getaway Driver's Statement*

A

1

As part of the criminal investigation, a police detective interviewed the suspected getaway driver.  At the outset of the interview, before the detective provided the driver with the advisements required by *Miranda v. Arizona* (1966) 384 U.S. 436, 444-445 (*Miranda* advisements), the pair had the following exchange:

> "[DETECTIVE]:  . . . Now you need to make a choice right now. You got a baby.
>
> "[DRIVER]:  Mm-hmm. [¶] . . . [¶] He's 18 months. [¶] . . . [¶]
>
> "[DETECTIVE]:  . . . I want to give you an opportunity.  You lied to me [during a previous conversation] and I caught you in a lie.  I caught you in another lie?  Okay?  Now you need to make up your mind . . . and you tell me what you wanna do.  Okay?  Because I will walk out this door.  I'll give you back to the patrol guys.  They'll take you to Las Colinas, we're done.  We'll let all the chips fall where they may in court.  Okay?  But I wanna give you an opportunity to come clean with this thing.  You need to, you need to make up your mind who you're gonna be loyal to, your baby or your man.  Because your man got you in some shit.  He got you in some shit and that's not fair to you.  He wasn't thinkin' of your baby, was he?  So who's gonna think of your baby?
>
> "[DRIVER]:  Me.

"[DETECTIVE]: How about the state? How about the state takes care of your baby? Who's gonna think of your baby?

"[DRIVER]: Me.

"[DETECTIVE]: Okay. Alright. Okay? Alright. You and me. You and I, we're gonna think of your baby, okay?"

The detective then provided the driver with the *Miranda* advisements and they discussed the robbery. The driver told the detective only Brown and Kennison planned the robbery. The detective told the driver not to lie to him about anything and asked her why telling the truth was the best thing to do. She replied, "So I can go home?" He responded: "No. No. you're not going home, honey. You're going to jail. Okay? You can't help people rob somebody and go home. You've gotta be responsible. But you don't have a record so I don't know what the DA's . . . office is gonna do with you. But what you need to be thinking about is your child here. Okay? If they think you're lying to me right now . . . if they think you're lying to me they're gonna think you're not being remorseful. Okay? I know you're just scared, but you know how you can get through this conversation? By telling the truth. You know why? Because the truth doesn't change. Okay? Do you understand that? That way you don't have to worry about what you told me. That way when you . . . take the stand or if you tell your lawyer or this or that and the other thing, 'cause you're gonna get one, you . . . the truth will come out really, really easy."

The driver then told the detective her account of the robbery, which implicated all of the defendants.

7

Butts filed a motion to suppress the driver's extrajudicial statements to the detective, arguing the statements could not be used against any defendant because the statements were involuntary. He also joined the driver's own motion to suppress the statements. The prosecutor indicated she did not intend to use the statements, except for impeachment purposes.

The driver argued the statements should also be excluded as impeachment evidence because the detective unduly influenced her by capitalizing on her concerns about being separated from her baby. The prosecutor argued the statements were voluntary as the driver was having "a back and forth sort of a congenial conversation" with the detective.

The trial court ruled the statements were voluntary and could be used for impeachment purposes. The court reasoned the detective's reference to the driver's child during the interview was not conveyed as a threat or improperly used to induce the driver's statements. The detective never told the driver she would be reunited with her child if she told him what happened. He also did not tell her she would be separated from her child for an extended period of time if she did not tell him what happened. The driver knew she was going to jail and the detective's suggestion that honesty would benefit her was true because truthfulness is considered during sentencing.

Neither the driver nor Butts testified at trial. Consequently, the prosecutor never used the driver's statements for any purpose.

B

Butts contends the court erred in determining the driver's extrajudicial statements were voluntary and in failing to exclude the statements for impeachment purposes. He further contends the error prejudiced him, implying it led him to decide not to testify on his own behalf. We need not address whether the court correctly decided the driver's statements were voluntary and admissible for impeachment purposes because Butts has not established the court's decision deprived him of a fair trial.

"[D]efendants generally lack standing to complain that a police interrogation violated a third party witness's Fifth Amendment privilege against self-incrimination or Sixth Amendment right to counsel." (*People v. Williams* (2010) 49 Cal.4th 405, 452.) "A defendant may assert a violation of his or her own right to due process of the law and a fair trial based upon third party witness coercion, however, if the defendant can establish that *trial* evidence was coerced or rendered unreliable by prior coercion and that the admission of this evidence would deprive the defendant of a fair trial." (*Id*. at pp. 452-453.) "The burden rests upon the defendant to demonstrate how the earlier coercion 'directly impaired the free and voluntary nature of the anticipated testimony in the trial itself' [citation] and impaired the reliability of the trial testimony." (*Id.* at p. 453.)

In this case, the driver never testified and the prosecutor never used the driver's statements for any purpose. Therefore, the driver's statements could not have impaired the reliability of her trial testimony.

Although Butts implies the court's ruling prompted him to elect not to testify, the record does not support this implication. Rather, the record shows Butts announced his intention not to testify in the middle of the prosecutor's case-in-chief, well before it was known whether the driver would testify. Moreover, as the People point out, there were other factors bearing on Butts's election not to testify, not the least of which was the prospect of his impeachment with his prior felony theft conviction. Accordingly, we conclude Butts has not met his burden of showing the court's decision resulted in "fundamental unfairness at trial." (*People v. Williams*, *supra*, 49 Cal.4th at p. 455.)

II

*Denial of Severance Motion*

A

Butts moved to sever his trial from his codefendants' trial because incriminating statements by his codefendants, if admitted, would deprive him of his right to confront adverse witnesses. The prosecutor opposed the motion, arguing a joint trial was warranted based on the two theories of culpability, conspiracy and aiding and abetting, as well as the facts supporting these theories. The prosecutor further argued a joint trial would not prejudice Butts because the prosecution's case was equally strong as to all of the defendants. The trial court agreed with the prosecutor's position and denied the motion.

B

Butts contends the court prejudicially erred in denying his severance motion because the evidence against him was not as strong as the evidence against his

10

codefendants, there were conflicting defenses, and the driver's extrajudicial statements posed a confrontation issue. " 'We review a trial court's denial of a severance motion for abuse of discretion based upon the facts as they appeared when the court ruled on the motion.' [Citations.] 'If we conclude the trial court abused its discretion, reversal is required only if it is reasonably probable the defendant would have obtained a more favorable result at a separate trial.' [Citations.] 'If the court's joinder ruling was proper when it was made, however, we may reverse a judgment only on a showing that joinder " 'resulted in "gross unfairness" amounting to a denial of due process.' " ' " (*People v. Souza* (2012) 54 Cal.4th 90, 109 (*Souza*).) Butts has not shown the court abused its direction or that joinder deprived him of due process of law.

"Our Legislature has expressed a strong preference for joint trials. [Citations.] 'Section 1098 provides in pertinent part: "When two or more defendants are jointly charged with any public offense, whether felony or misdemeanor, they must be tried jointly, unless the court order[s] separate trials." The court may, in its discretion, order separate trials if, among other reasons, there is an incriminating confession by one defendant that implicates a codefendant, or if the defendants will present conflicting defenses.' [Citations.] 'Additionally, severance may be called for when "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." ' " (*Souza*, *supra*, 54 Cal.4th at p. 109.)

Here, the defendants were charged with common crimes involving common events and victims, presenting a classic case for a joint trial. (*Souza*, *supra*, 54 Cal.4th at

11

p. 110.)  Although Butts contends his defense conflicted with or was antagonistic to his codefendants' defenses, this circumstance is not sufficient by itself to require separate trials.  (*Ibid.*)  " ' "Rather, to obtain severance on the ground of conflicting defenses, it must be demonstrated that the conflict is so prejudicial that [the] defenses are irreconcilable, and the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty." ' "  (*Id*. at p. 111.)  Butts has not asserted, much less attempted to demonstrate, the requisite irreconcilability.  Indeed, the example of conflicting defenses he identified—that two of his codefendants claimed not to be present during the robbery and that he claimed to be present solely to purchase marijuana, not steal it—are not only reconcilable, but are arguably compatible.[3]

The potential use of the driver's extrajudicial statements for impeachment is also not a sufficient circumstance to require separate trials.  (See *People v. Hoyos* (2007) 41 Cal.4th 872, 895-896 [failure to sever a trial where a codefendant's extrajudicial statements could potentially be used for impeachment did not result "in gross unfairness amounting to a violation of due process"], disapproved on other points in *People v. Black* (2014) 58 Cal.4th 912, 919-920, and *People v. McKinnon* (2011) 52 Cal.4th 610, 638, 641-642.)  Further, and contrary to Butts's suggestions, nothing in the record indicates the

---

[3]    Given our conclusion, we need not address the People's contention Butts forfeited the existence of conflicting defenses as a ground for challenging the trial court's denial of his severance motion.  (But see, *People v. Tafoya* (2007) 42 Cal.4th 147, 163; *People v. Jenkins* (2000) 22 Cal.4th 900, 949 [appellant forfeited specific argument for challenging trial court's denial of severance motion because he did not raise the argument below].)

12

court could have or would have permitted the use of the driver's statements to impeach Butts if Butts testified and the driver did not.

Finally, the evidence of the codefendants' varying roles and relationships to one another and to the robbery did not require severance. It is "quite likely that different defendants participating together in a crime will have different levels of involvement and different personal backgrounds. These circumstances alone do not compel severance or render a joint trial grossly unfair." (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 383.) "To justify severance the characteristics or culpability of one or more defendants must be such that the jury will find the remaining defendants guilty simply because of their association with a reprehensible person, rather than assessing each defendant's individual guilt of the crimes at issue." (*Ibid.*) Here, however, the record does not show the evidence against Brown, which included rap videos the prosecution opted not to offer at trial, portrayed him so reprehensibly the jury would have found his codefendants guilty by association. In addition, the evidence against Brown, Kennison, and Butts, while differing, was of comparable strength and amply supported their convictions. Moreover, the jury demonstrated its ability to consider and weigh the relative strength of the evidence against each individual by acquitting two of Butts's codefendants. (See fn. 2, *ante*.) Accordingly, Butts has not established the trial court prejudicially erred in denying his severance motion.

## III

*Admission of Kennison's Statements to Victim*

### A

Before trial, the prosecutor moved to admit Kennison's statements to the victim indicating a robbery was occurring. The prosecutor argued the statements were admissible under Evidence Code section 1223 as statements by a coconspirator during the course of a conspiracy. The defendants objected to admission of the statements, arguing the hearsay exception did not apply until the prosecutor first proved the existence of a conspiracy at the time the statements were made. The prosecutor argued the statements were admissible subject to a motion to strike absent sufficient proof of a conspiracy. The prosecutor also argued there was prima facie evidence of a conspiracy because the crime and, consequently, the conspiracy were underway when Kennison made the statements and the defendants all fled in the same vehicle. The trial court granted the prosecutor's motion, finding the prosecutor's offer of proof was sufficient to warrant admission of the statements subject to any change in the evidence.

### B

Hearsay is generally inadmissible. (Evid. Code, § 1200.) However, "[e]vidence of a statement offered against a party is not made inadmissible by the hearsay rule if: [¶] (a) The statement was made by the declarant while participating in a conspiracy to commit a crime or civil wrong and in furtherance of the objective of that conspiracy; [¶] (b) The statement was made prior to or during the time that the party was participating in that conspiracy; and [¶] (c) The evidence is offered either after admission of evidence

14

sufficient to sustain a finding of the facts specified in subdivisions (a) and (b) or, in the court's discretion as to the order of proof, subject to the admission of such evidence." (Evid. Code, § 1223.)

A prima facie showing of a conspiracy is required before a trial court may admit a statement under Evidence Code section 1223. (*People v. Gann* (2011) 193 Cal.App.4th 994, 1005 (*Gann*).) A prima facie showing in this context "simply means that a reasonable jury could find it more likely than not that the conspiracy existed at the time the statement was made." (*People v. Herrera* (2000) 83 Cal.App.4th 46, 63.)

"A conspiracy is an agreement between two or more persons, with specific intent, to achieve an unlawful objective, coupled with an overt act by one of the conspirators to further the conspiracy." (*Gann*, *supra*, 193 Cal.App.4th at p. 1005.) A "conspiracy may be shown by circumstantial evidence and the agreement may be inferred from the conduct of the defendants mutually carrying out a common purpose in violation of a penal statute." (*Id*. at pp. 1005-1006.)

" 'Once independent proof of a conspiracy has been shown, three preliminary facts must be established: "(1) that the declarant was participating in a conspiracy at the time of the declaration; (2) that the declaration was in furtherance of the objective of that conspiracy; and (3) that at the time of the declaration the party against whom the evidence is offered was participating or would later participate in the conspiracy." ' " (*People v. Homick* (2012) 55 Cal.4th 816, 871.)

In California, the existence of the conspiracy must be established by evidence independent of the proffered statement. (*People v. Herrera*, *supra*, 83 Cal.App.4th at

15

p. 65.)  However, after the existence of the conspiracy is established, the content of the statement must be considered in determining whether the statement was in furtherance of the conspiracy.  (*Ibid.*)

In this case, the prosecutor proffered sufficient evidence, which if believed by the jury, supported a finding Kennison and his codefendants were more likely than not engaged in a conspiracy at the time Kennison made the statements to the victim.  Specifically, there was evidence Brown arranged to meet the victim, went to the meeting location, got in the victim's truck, and was inspecting the victim's marijuana when Kennison approached the victim.  When the victim got out of his truck to protect himself and his marijuana, Kennison, Brown, Butts, and another man surrounded the victim.  As some of the men beat the victim to the ground, Brown took the victim's phone and the marijuana.  Then all four men fled in an awaiting car.

This same evidence, coupled with the content of Kennison's statements, also supports the court's findings Kennison made the statements in furtherance of the conspiracy and while participating in the conspiracy along with Butts.  Butts, therefore, has not established the trial court erred in admitting Kennison's statements under Evidence Code section 1223.

IV

*Use of Booking Photographs During Opening Statement*

A

Before trial, the prosecutor requested the trial court's permission to use the defendants' booking photographs in a slide show presentation during her opening

16

statement.  She explained she would not refer to the photographs as booking photos and she would only use them to "identify the players" in the case.  The defendants objected to the use of the photographs, arguing the photographs were prejudicial and unnecessary as all of the defendants would be present in court.

The court overruled the defendants' objections.  The court explained, "I don't believe that they are improper in terms of placing the defendants in a bad light.  It doesn't show them shackled.  They're basically headshots.  I don't think it shows them with some sort of improper expression on their faces.  They are photos that are of the defendants at the time that they were contacted by law enforcement relating to this case.  And so I think that the passing reference use of them by the People in referring to the defendants who are spread around half the courtroom is permissible and is not unduly prejudicial to any defendant."

Before the prosecutor's opening statement, the court instructed the jury "[a]n opening statement is not evidence" and the jury "must not consider as evidence any statement of any attorney made during the trial."  It also instructed the jury, "You must not be biased against the defendants because they may have been arrested for this offense, charged with a crime, ever been in custody, or been brought to trial.  None of these circumstances would be evidence of guilt and you must not infer or assume from any or all of them that the defendant[s] may be more likely to be guilty than not guilty."

Before closing arguments, the court further instructed the jury, "Nothing that the attorneys say is evidence.  In their opening statements and closing arguments the

17

attorneys discussed the case, but their remarks are not evidence, their questions are not evidence . . . ."

B

Butts contends the trial court erred in allowing the prosecutor to use his and his codefendants' booking photographs in her opening statement. He further contends the use of the photographs deprived him of the presumption of innocence and the right to a fair trial.

Assuming, without deciding, the trial court erred in allowing the demonstrative use of the booking photographs, the error was harmless under both the federal and state standards. (*Chapman v. California* (1967) 386 U.S. 18, 24; *People v. Watson* (1956) 46 Cal.2d 818, 836-837.) Nothing in the record indicates the photographs were inflammatory or that defendants' appearance in the photographs differed appreciably from their appearance at trial. The prosecutor did not refer to the photographs as booking photographs nor did she seek to admit them as evidence. The court advised the jury the prosecutor's statements were not evidence. The court also advised the jury it must not be biased against the defendants because they were charged with a crime or were in custody, and it could not consider these circumstances as evidence of guilt. "We presume the jury followed the instructions it was given." (*People v. Chism* (2014) 58 Cal.4th 1266, 1299.) Butts has not rebutted this presumption. To the contrary, the jury's acquittal of two of the defendants whose photographs were shown demonstrates the jury was not unduly influenced by the photographs. Therefore, Butts has failed to establish he was prejudiced by the claimed error.

18

V

*Cumulative Error*

Butts contends the accumulation of the above errors deprived him of due process of law and, consequently, requires us to reverse his conviction. We reject this argument as "[w]e have found no error that, either alone or in conjunction with others, prejudiced [him]." (*People v. Williams* (2013) 56 Cal.4th 165, 201.)

VI

*Abstract of Judgment Error*

Although the trial court stayed Brown's and Kennison's sentences for their count 1 conspiracy convictions under section 654, their abstracts of judgment indicate the court imposed concurrent sentences for this count.[4] Brown and Kennison contend, the People concede, and we agree the abstracts of judgment must be corrected to reflect the court's oral pronouncement of sentence.

"In a criminal case, it is the *oral pronouncement of sentence* that constitutes the judgment. [Citation.] To the extent a minute order diverges from the sentencing proceedings it purports to memorialize, it is presumed to be the product of clerical error. [Citation.] Likewise, the abstract of judgment ' "cannot add to or modify the judgment which it purports to digest or summarize." ' [Citations.] As with other clerical errors, discrepancies between an abstract and the actual judgment as orally pronounced are

---

[4]     Butts's abstract of judgment correctly indicates the court stayed the sentence for his count 1 conspiracy conviction.

19

subject to correction at any time, and should be corrected by a reviewing court when detected on appeal."  (*People v. Scott* (2012) 203 Cal.App.4th 1303, 1324.)

VII

*Stay of Sentences for Battery Convictions*

A

Brown and Kennison contend the trial court should have stayed their sentences for their count 3 battery convictions because the battery was part of an indivisible course of conduct.  We agree.

"[Section 654] prohibits the imposition of punishment for more than one violation arising out of an 'act or omission' which is made punishable in different ways by different statutory provisions."  (*People v. Beamon* (1973) 8 Cal.3d 625, 636.)  Section 654 applies " ' "not only where there was but one 'act' in the ordinary sense . . . but also where a course of conduct violated more than one statute . . . within the meaning of section 654." ' "  (*People v. Beamon*, *supra*, at p. 637; *People v. Rodriguez* (2009) 47 Cal.4th 501, 507.)  "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor.  If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one."  (*Neal v. State of California* (1960) 55 Cal.2d 11, 19; disapproved on another ground in *People v. Correa* (2012) 54 Cal.4th 331, 336; *People v. Rodriguez*, *supra*, at p. 507; *People v. Wynn* (2010) 184 Cal.App.4th 1210, 1214-1215.)  "If, on the other hand, defendant harbored 'multiple criminal objectives,' which were independent of and not merely incidental to each other,

20

he may be punished for each statutory violation committed in pursuit of each objective, 'even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.' " (*People v. Harrison* (1989) 48 Cal.3d 321, 335; *People v. Wynn*, *supra*, at p. 1215.) " ' " 'A trial court's implied finding that a defendant harbored a separate intent and objective for each offense will be upheld on appeal if it is supported by substantial evidence.' " ' " (*People v. McKinzie* (2012) 54 Cal.4th 1302, 1368.)

Here, in imposing concurrent terms for Brown's and Kennison's battery convictions, the trial court implicitly found they had a separate objective to commit the battery. However, the evidence is insufficient to support this finding. The evidence shows the men beat the victim while trying to take the victim's marijuana. The beating ended when they successfully obtained the marijuana and fled. These facts indicate the battery was incidental to the robbery and was not a gratuitous act of violence, an afterthought, or motivated by animus unrelated to the robbery. (See *People v. Nunez* (2012) 210 Cal.App.4th 625, 630 [assault was not divisible from carjacking where defendant committed the assault to take the car from a resisting victim].) Accordingly, section 654 prohibits multiple punishments for both the robbery and the battery and the trial court should have stayed the sentences for Brown's and Kennison's battery convictions.

B

As noted earlier, the trial court failed to sentence Butts for his battery conviction. The court was not authorized to waive sentencing for this conviction. We, therefore, remand the matter to permit the court to impose a sentence for it. (*People v. Cunningham*

21

(2001) 25 Cal.4th 926, 1044-1045 [failing to imposed a sentence is error subject to correction when it comes to the trial court's or appellate court's attention].) Once the court imposes its sentence, the sentence must be stayed under section 654 for the same reasons discussed in part VII.A, *ante*.

## VIII

### *Restitution Fines*

#### A

As part of Kennison's sentence, the court imposed a restitution fine of $1,120 and a corresponding parole revocation fine of the same amount. As part of Butts's and Brown's sentences, the trial court imposed a restitution fine of $2,520 and a corresponding parole revocation fine in the same amount. As part of Butts's sentence for his probation revocation case, the court imposed a new restitution fine of $200 as well as a previously stayed restitution fine of $200. It also imposed a parole revocation fine of $280.

All three men contend the court erred in calculating the amount of their restitution and parole revocation fines. Butts additionally contends the court erred in its imposition of restitution and parole revocation fines in his probation revocation case. We agree.

#### B

##### 1

"In every case where a person is convicted of a crime, the court shall impose a separate and additional restitution fine, unless it finds compelling and extraordinary reasons for not doing so and states those reasons on the record." (§ 1202.4, subd. (b).)

22

For a conviction of a felony crime on or after January 1, 2013, but before January 1, 2014, the fine may not be less than $280 or more than $10,000. (§ 1202.4, subd. (b)(1).)

The court may, as it intended to do in this case, determine the amount of the fine by calculating the product of the minimum fine "multiplied by the number of years of imprisonment the defendant is ordered to serve, multiplied by the number of felony counts of which the defendant is convicted." (§1202.4, subd. (b)(2).) The calculation may not, however, include convictions for which the court must stay execution of sentence under section 654. (*People v. Sencion* (2012) 211 Cal.App.4th 480, 483; *People v. Le* (2006) 136 Cal.App.4th 925, 934.) As the court's calculation of the appellants' restitution fines included convictions for which it stayed or should have stayed execution of sentence, the fine amount must be reduced accordingly. The fine amount for Brown and Butts should be $840 ($280 multiplied by three years in prison, multiplied by one felony count) and the fine amount for Kennison should be $560 ($280 multiplied by two years in prison, multiplied by one felony count).

As the court was required to impose matching parole revocation fines (§ 1202.45, subd. (a)), these fines must also be reduced to $840 for Brown and Butts and $560 for Kennison. Given our conclusions in this part and part VII, *ante*, we need not address the People's contention the trial court erred by failing to impose a restitution fine for appellants' battery convictions.

2

The court also erred in imposing a new restitution fine in Butts's probation revocation case. A "court may not impose a second restitution fine after probation has

23

been revoked because the original fine survives the revocation of probation." (*People v. Rios* (2013) 222 Cal.App.4th 542, 576.)  The amount of the parole revocation fine must also be reduced to $200 since the parole revocation fine must be in the same amount as the original restitution fine imposed in the probation revocation case.  (*Ibid.*)

## DISPOSITION

As to Brown, the trial court is directed to modify the abstract of judgment to show the stay of his sentences for counts 1 and 3, the imposition of a felony restitution fine of $840, and the imposition of a corresponding parole revocation fine of $840.  As to Kennison, the trial court is directed to modify the abstract of judgment to show the stay of his sentences for counts 1 and 3, the imposition of a felony restitution fine of $560, and the imposition of a corresponding parole revocation fine of $560.  As to Butts, the matter is remanded for sentencing as to count 3, consistent with this court's decision in part VII.  In addition, the trial court is directed to modify the abstract of judgment to show the imposition of a felony restitution fine of $840 and a corresponding parole revocation fine of $840 in this case, and the imposition of a restitution fine of $200 and a corresponding parole revocation fine of $200 in the probation revocation case.

The trial court shall forward a copy of each amended abstract of judgment to the Department of Corrections and Rehabilitation.  The judgments are affirmed in all other respects.

MCCONNELL, P. J.

WE CONCUR:

BENKE, J.

McINTYRE, J.