Filed 4/26/13  P. v. Morales CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B240625 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. LA059214) |
| v. | |
| EDWIN MORALES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of the County of Los Angeles, Susan M. Speer, Judge.  Affirmed as modified.

Mark D. Lenenberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, Kimberley J. Baker-Guillemet, Deputy Attorney General, for Plaintiff and Respondent.

# INTRODUCTION

Defendant and appellant Edwin Morales (defendant) was convicted of second degree murder. (Pen. Code, §§ 187, subd. (a)[1]). On appeal, defendant contends that the trial court erred in responding to a question posed by the jury because it did not do so adequately, and the abstract of judgment should be corrected to reflect the custody credits awarded him by the trial court.

We order that the abstract of judgment be corrected to state that defendant is awarded 1,409 days of custody credit consisting of 1,409 days of actual custody credit. We otherwise affirm the judgment.

# BACKGROUND

## A.     Factual Background

Defendant hit Jorge Veliz with a bottle twice and stabbed and killed Veliz. Prior to being stabbed, Veliz drank alcohol with defendant's mother, made comments about defendant's mother that defendant deemed to be disrespectful, refused defendant's repeated requests that he leave the premises, attempted to take defendant's mother out on a date, and pushed and hit defendant. Defendant submitted evidence that he was frightened and suffered from schizophrenia, was under medication for schizophrenia, and was not medicated at the time Veliz was killed.

## B.     Procedural Background

Following a trial, the jury found defendant guilty of second degree murder in violation of section 187, subdivision (a). The jury found true that defendant used an edged weapon within the meaning of section 12022, subdivision (b)(1).

The trial court sentenced defendant to state prison for a term of 16 years to life, consisting of a term of 15 years to life for second degree murder, plus a one year-

---

[1]     All statutory citations are to the Penal Code unless otherwise noted.

enhancement under section 12022, subdivision (b)(1). The trial court awarded defendant 1,409 days of custody credit consisting of 1,409 days of actual custody credit.[2]

## DISCUSSION

### A.    Response to Jury's Inquiry

While deliberating, the jury asked the trial court a question that provided, inter alia, whether for purposes of determining if the defendant is guilty of manslaughter instead of murder, "does an average [provoked] person have to act to the same extent as the defendant did." Defendant cites *People v. Najera* (2006) 138 Cal.App.4th 212, at page 223, for the proposition that the reasonable person analysis for voluntary manslaughter focuses "on the provocation—the surrounding circumstances—and whether it was sufficient to cause a reasonable person to act rashly. How the killer responded to the provocation and the reasonableness of the response is not relevant to sudden quarrel or heat of passion." Defendant contends that the jury's inquiry questioned whether, for purposes of manslaughter, an average provoked person has to "kill," and the trial court did not respond to the question by stating that the jury was not allowed to consider whether defendant's act of killing Veliz was reasonable. Moreover, defendant argues that the trial court should have inquired further of the jury as to the nature of its question.

#### 1.    Background Facts

The trial court instructed the jury with CALCRIM No. 520, stating that to prove defendant was guilty of murder, the People must prove that defendant acted with malice aforethought when he caused the death of another person, and proof of either express malice—unlawful intention to kill—or implied malice would be sufficient to establish the

---

[2]    As discussed *post*, although at the sentencing hearing the trial court stated that defendant was awarded 1,409 days of actual custody credit, the abstract of judgment states that defendant was not granted any custody credits. The minute order does not mention custody credits.

state of mind required for murder. The trial court instructed the jury that, "Defendant acted with implied malice if he intentionally committed an act; the natural and the probable consequences of the act were dangerous to human life; at the time he acted, he knew his act was dangerous to human life; and four, he deliberately acted with conscious disregard for human life. . . . [¶] . . . . [Malice aforethought] must be formed before the act is committed.

The trial court also instructed the jury with CALCRIM No. 570, stating, inter alia, that, "A killing that would otherwise be murder is reduced to voluntary manslaughter if the defendant killed someone because of a sudden quarrel or in the heat of passion. [¶] The defendant killed someone because of a sudden quarrel or in the heat of passion if, one, the defendant was provoked; two, as a result of the provocation, the defendant acted rashly and under the influence of intense emotion that obscured his reasoning or judgment; and *three, the provocation would have caused a person of average disposition to act rashly and without due deliberation; that is, from passion rather than from judgment*. [¶] Heat of passion does not require anger, rage or any specific emotion. It can be any violent or intense emotion that causes a person to act without due deliberation and reflection. [¶] In order for heat of passion to reduce a murder to voluntary manslaughter, the defendant must have acted under the direct and immediate influence of provocation as I have defined it. [¶] While no specific type of provocation is required, slight or remote provocation is not sufficient. . . . [¶] It is not enough that the defendant simply was provoked. The defendant is not allowed to set up his own standard of conduct. You must decide whether the defendant was provoked and whether the provocation was sufficient. [¶] *In deciding whether the provocation was sufficient, consider whether a person of average disposition in the same situation and knowing the same facts, would have reacted from passion rather than from judgment*. [¶] . . . [¶] The People have the burden of proving beyond a reasonable doubt that the defendant did not kill as the result of a sudden quarrel or in the heat of passion. If the People have not met this burden, you must find the defendant not guilty of murder." (Italics added.)

4

Defendant argued to the jury that the manslaughter instruction "does not say that a person of average disposition would also have killed." The prosecutor argued during closing argument, "And here's the biggest problem, it's number three: The provocation would have caused a person of average disposition to act rashly and without due deliberation, that is from passion rather than judgment. [¶] You have to think of what an average person would do. Would an average person act this way? Would an average person respond this way?"[3]

During jury deliberations, the jury asked the trial court, "For manslaughter-Heat of passion, does an average person have to act to the same extent as the defendant did, or would it satisfy the manslaughter charge if an average person would act rashly without due deliberation?"

Outside the presence of the jury, the trial court read the jury's question to counsel, and proposed the following answer to the jury's inquiry: "The heat of passion requirement for manslaughter has both an objective and subjective component. Defendant must actually subjectively kill under the heat of passion, but such heat of passion must be objectively viewed under the reasonable person standard. In other words, the defendant must have killed while subjectively under the influence of strong passion aroused by provocation sufficient to lead an ordinary person of average disposition to act rashly and without due deliberation and reflection and from passion rather than from judgment. [¶] The fact that a defendant suffers from a mental abnormality or has a particular or has particular susceptibilities to events is irrelevant in determining whether the claimed provocation was sufficient."

---

[3] Defendant admits that had he contended on appeal that there was prosecutorial misconduct based on this statement, that contention would be deemed properly to have been forfeited. Defendant states however that he "makes no such argument, but instead asserts that the prosecutor's argument was the source of the jury's confusion," as reflected in their question referenced below, as to whether a finding of manslaughter requires that an average person would have been provoked to kill, and the trial court did not resolve that confusion with its answer to the question.

Defendant's counsel stated that she did not have an objection to the first paragraph of the proposed response; it "obviously is appropriate." Defendant's counsel stated, "I have only an objection to the . . . second paragraph. [The jury] was not asking anything about mental abnormalities or whether or not evidence of mental illness is . . . considered. [¶] Their question is pretty straightforward . . . . [W]ould an average person . . . be driven to kill or it is simply that an average person would be acting rashly and without due deliberation, which is the exact language in [CALCRIM No. 570,] the jury instruction for heat of passion." The trial court stated, "[The jury's question] doesn't make sense to me unless they are somehow considering the defendant's mental illness, which is causing their confusion. [¶] . . . [¶] [T]hey have [CALCRIM No. 570] and apparently it's not helping them reach a verdict. I think it can only be confusion regarding his mental illness . . . ."

The following exchange then occurred: "[Defendant's counsel:] "So my concern is this: . . . I think we need to ask them for . . . clarification as to what they're asking about. I don't think we can make the assumption that they are factoring in the mental illness issue. [¶] When I argued it, I told them the mental illness doesn't factor in here. I just think it's inappropriate to provide them with information that is not what's being asked for because the question isn't worded clearly enough to understand what they're asking. So I'd ask them to reword their question. [¶] [Trial court:] But if you agree that is an accurate statement of the law . . . why would you object to it being given in written form? [¶] [Defendant's counsel:] Because it's not an actual response to their question." The trial court asked defendant's counsel, "So if you had to answer their question yes or no, how would you answer that?" Defendant's counsel responded, "That the average person would act rashly without due deliberation."

The following exchange then occurred: "[Trial court:] "So, [prosecutor], are you in agreement that I leave out the last sentence? [¶] [Prosecutor:] "If it's a big deal for the defense, that's fine. . . . [¶] [Trial court:] Then I'll give the answer as worded with the exception of the last paragraph pertaining to a defendant suffering from a mental abnormality be deleted. [¶] [Defendant's counsel:] The last sentence, yes, I would ask

6

that that last sentence be deleted.  [¶]  [Trial court:]  All right.  So we hope this works.  Okay."  Defendant and the Attorney General agree that the trial court responded to the jury's question with the trial court's proposed response except that the last sentence was omitted.

### 2.  *Analysis*

The Attorney General contends that defendant forfeited his contention that the trial court erred in responding to a question posed by the jury because defendant failed to object to the final form of the trial court's answer to the jury's question.  We agree.

Acquiescence by defendant's counsel in the trial court's response to the jury's question forfeits a claim of error on appeal as to that response.  (*People v. Rogers* (2006) 39 Cal.4th 826, 877.)  In *People v. Harris* (2008) 43 Cal.4th 1269, the defendant claimed that during its deliberations, the jury demonstrated confusion over the sentencing choices by asking the trial court for a definition of a phrase in a jury instruction.  The court stated, "[the d]efendant complains that the court's answer was 'essentially . . . no response at all,' and amounted to ignoring the jury's request for a definition.  He has waived this argument by specifically agreeing below to the court's handling of the jury's question.  (*People v. Turner* (2004) 34 Cal.4th 406, 437 [20 Cal.Rptr.3d 182, 99 P.3d 505]; see *also People v. Martinez* [(2003)] 31 Cal.4th [673,] 698.)"  (*Id*. at p. 1317; *People v. Marks* (2003) 31 Cal.4th 197, 237 [rejecting a defendant's contention that a court's response to a jury inquiry regarding its instructions was incorrect and stating, "if defendant favored further clarification, he needed to request it" and "[h]is failure to do so waives this claim"]; *People v. Hughes* (2002) 27 Cal.4th 287, 402 [rejecting a claim that the court gave an insufficient response to a jury inquiry about deadlock, stating "this claim is waived by defense counsel's agreement with the trial court that informing the jury of the consequences of a deadlock would have been improper"]; *People v. Bohana* (2000) 84 Cal.App.4th 360, 373 ["[w]here, as here, appellant consents to the trial court's response to jury questions during deliberations, any claim of error with respect thereto is waived"].)

Defendant's counsel stated that she did not have any objection to the portion of the trial court's proposed response that was ultimately read to the jury, stating that it "obviously is appropriate."[4]  In response to the trial court's inquiry of defendant's counsel as to how she would answer the jury's question, she responded "That the average person would act rashly without due deliberation."  The trial court's answer mirrored how defendant's counsel suggested that the jury's question be answered.  The trial court responded to the jury's question by stating, inter alia, that,"[T]he defendant must have killed while subjectively under the influence of strong passion aroused by provocation sufficient to lead an ordinary person of average disposition to act rashly and without due deliberation and reflection and from passion rather than from judgment."

Defendant contends he did not forfeit his contention because his counsel requested that the trial court question the jury about what they were seeking.  Defendant's counsel made her request to the trial court to question the jury in the context of the second paragraph of the proposed response because she did not "think we can make the assumption that they are factoring in the mental illness issue."  The request by defendant's counsel was not made regarding whether the jury was asking if a finding of manslaughter may be made on the basis that an average person would have been provoked to kill.  Pursuant to the objection by defendant's counsel the trial court omitted the second paragraph of the proposed response from the response ultimately provided to the jury.  Defendant no longer requested that the trial court question the jury about what information the jurors were seeking.

---

[4]     The court in *People v. Steele* (2002) 27 Cal.4th 1230 stated, "The heat of passion requirement for manslaughter has both an objective and a subjective component. [Citation.]  The defendant must actually, subjectively, kill under the heat of passion. [Citation.]  But the circumstances giving rise to the heat of passion are also viewed objectively.  As we explained long ago in interpreting the same language of section 192, 'this heat of passion must be such a passion as would naturally be aroused in the mind of an ordinarily reasonable person under the given facts and circumstances,' because 'no defendant may set up his own standard of conduct and justify or excuse himself because in fact his passions were aroused, unless further the jury believe that the facts and circumstances were sufficient to arouse the passions of the ordinarily reasonable man.' [Citation.]"  (*Id*. at p. 1252.)

8

**B. Custody Credit**

Defendant contends that the abstract of judgment should be corrected to reflect the custody credits the trial court awarded him. The Attorney General agrees.

At the sentencing hearing, the trial court awarded defendant 1,409 days of custody credit consisting of 1,409 days of actual custody credit. The abstract of judgment states that defendant was not granted any custody credits.

"[A] trial court's oral sentence governs if it is different from what appears in a minute order or an abstract of judgment [citations] . . . ." (*People v. Wynn* (2010) 184 Cal.App.4th 1210, 1221; *People v. Walz* (2008) 160 Cal.App.4th 1364, 1367, fn. 3; *People v. Mitchell* (2001) 26 Cal.4th 181, 185.) Accordingly, the abstract of judgment should be corrected to reflect the trial court's oral pronouncement that defendant is awarded 1,409 days of custody credit consisting of 1,409 days of actual custody credit.

## DISPOSITION

The abstract of judgment shall be corrected to state that defendant is awarded 1,409 days of custody credit consisting of 1,409 days of actual custody credit. We otherwise affirm the judgment.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


MOSK, J.


We concur:



TURNER, P. J.



ARMSTRONG, J.


9