Filed 9/26/16  P. v. Alfano CA2/6

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOSHUA DAVID ALFANO et al.,<br><br>    Defendants and Appellants. | 2d Crim. No. B258685<br>(Super. Ct. Nos. YA083919-01, -02)<br>(Los Angeles County) |

Joshua David Alfano appeals a judgment following conviction of first degree murder with a finding of special circumstances, kidnapping, first degree burglary (three counts), second degree robbery, and vehicle theft.  (Pen. Code, §§ 187, subd. (a), 189, 190.2, subd. (a)(17), 207, subd. (a), 459, 211; Veh. Code, § 10851, subd. (a).)[1]  We affirm.

Morgan Tyler Delange appeals a judgment following conviction of first degree murder, kidnapping, first degree burglary, second degree robbery, and vehicle theft.  (§§ 187, subd. (a), 189, 207, subd. (a), 459, 211; Veh. Code, § 10851, subd. (a).)  We affirm.

*FACTUAL AND PROCEDURAL HISTORY*

On March 23, 2012, the Torrance Police Department received an inquiry concerning the welfare of 67-year-old Norman Mangus.  In response, Officer Danielle

---

[1] All statutory references are to the Penal Code unless stated otherwise.

Morreale visited Mangus's home that evening and found the front door locked and accumulated mail in the mailbox. Morreale walked to the side of the residence where she discovered Mangus's body. Zip-ties restrained his ankles, a cloth belt encircled his neck, and an object, later determined to be a beanie cap, was stuffed into his mouth. An autopsy later determined that Mangus suffered a rib fracture, a damaged tooth, and forearm abrasions, and died from asphyxia due to strangulation.

Reynaldo Thaddeus San Pascual and Mangus had been longtime partners who lived together until 2010. Following their separation, they remained close friends, contacting each other frequently and maintaining a joint bank account. During a telephone conversation in February 2012, Mangus informed San Pascual that he was renting a room to Alfano. Mangus sometimes rented rooms to tenants whom he found on "Craig's List."

*February 2012, Burglary*
*(Count 7 - Alfano)*

On March 1, 2012, Mangus reported to police officers that during a recent hospital stay, his home had been burglarized. He also stated that Alfano had assaulted him. The responding police officer saw that a safe had been breached and that Mangus had cuts, scrapes, and bruises on his head. Mangus reported that $27,000 currency and pieces of jewelry were missing.

*March 5, 2012, Burglary*
*(Count 5 - Alfano)*

On March 5, 2012, Mangus reported a second burglary of his residence. He informed the responding police officer that Alfano had assaulted him and taken jewelry and a bank debit card. The bank also notified Mangus of suspicious activity in his bank account. San Pascual later received alerts of overdraws due to "huge" withdrawals. San Pascual informed Torrance police officers of the bank account thefts and provided Alfano's name.

2

*March 19, 2012, Murder*

In February 2012, Alfano left the Mangus residence and soon rented a room with Delange in shared housing on Ruthelen Street. Delano Dyson, a neighboring tenant, observed Alfano and Delange placing beanie-cap masks on their faces and stating that they were "gonna rob someone." Dyson provided scissors to cut "eyeholes" in the masks. On another occasion, Delange laughingly begged Dyson to rescue him from zip-tie restraints that Alfano had tied around his hands and feet.

*Vehicle and Property Theft*

In the evening of March 20, 2012, Los Angeles Police Officer Ismael Contreras detained Delange and Alfano for a traffic infraction. Delange was driving Mangus's Toyota Celica automobile; he appeared nervous and stated that he was in a hurry. Alfano appeared "stiff" and did not make eye contact with Contreras. Contreras issued a citation to Delange and permitted the two men to depart.

Beginning on March 19 or 20, 2012, and on occasion thereafter, Dyson saw Delange driving Mangus's Toyota Celica automobile. When Delange received a parking citation regarding the vehicle, he complained to the property manager concerning the absence of parking spaces.

Despite the lack of title to Mangus's automobile, Delange and Alfano sold it to a "Craigs List" buyer for $1,500. Dyson also saw Alfano and Delange with a flat-screen television that they offered for sale. The owner of a neighboring residence later purchased the television.

A police search of Mangus's residence revealed that the back door was unlocked and the television was missing from the entertainment center. Inside the home, officers found mail addressed to Alfano. Along the front walkway, a silver key, a right-hand black leather glove, broken eyeglasses, and a plastic zip-tie were recovered. A black-bead rosary necklace lay in a bush. Officers also found another silver key near Mangus's body, which lay approximately 32 feet from the front walkway.

On March 26, 2012, police officers executed a search warrant at Alfano and Delange's residence. Among other things, they recovered plastic zip-ties, a wallet

containing Mangus's identification, Mangus's bank debit card, a traffic citation, a beanie cap with cutouts, a left-hand black leather glove, Mangus's bank account statements, a parking citation, and registration and insurance documents regarding Mangus's automobile. The silver key recovered near Mangus's body fit the deadbolt lock of the front door to the Ruthelen residence.

Following Alfano's and Delange's arrests, police officers obtained DNA samples from them. Later laboratory analysis determined that the exterior of the glove found near Mangus's body contained the DNA of Mangus, Delange, and Alfano. Analysis performed on the zip-tie found on the front walkway of Mangus's residence determined that Delange was a contributor, with the likelihood of a random match of one in 21 quadrillion. Analysis of the zip-ties binding Mangus revealed that Delange and Mangus were contributors. Mangus, Delange, and Alfano were DNA contributors to the beanie cap used to muffle Mangus.

*Police Interviews*

Following advisements pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436, 479 ("*Miranda*"), police officers interviewed Alfano and Delange separately. Generally, each man blamed the other for killing Mangus. Police officers videotaped the interviews and the prosecutor played the recordings at trial.

During his interview, Alfano, then 20 years old, admitted that he and Delange had a plan to "beat [Mangus] up," but Delange "got crazy and killed him." Alfano stated that Delange strangled Mangus with a belt and "stomped" on his chest twice. Alfano admitted striking Mangus two or three times in the face because he was "there in the moment." Alfano stated that he and Delange entered Mangus's residence after retrieving Mangus's keys from his pocket. Inside, they took Mangus's television set and his automobile keys. Alfano also admitted that he previously burglarized Mangus's home and forced his safe, but denied assaulting him on those occasions.

During his interview, Delange, then 18 years old, stated that he accompanied Alfano to rob Mangus. Beforehand, Delange telephoned Mangus and stated that he and Alfano would be returning items Alfano took from the safe during a

4

prior burglary. When they met Mangus outside his residence, Alfano struck Mangus two to four times on his head, kicked and choked him, and "stomped" on his chest. Delange tied zip-ties around Mangus's hands and feet, and "just helped . . . keep him quiet." Mangus was alive when Delange and Alfano carried him to the side of the house. Delange then took Mangus's automobile keys and Alfano took the television and Mangus's wallet. Alfano placed the television in Mangus's automobile and they drove away. Delange left behind a rosary, zip-ties, and beanie mask.

*Conviction and Sentencing*

Alfano and Delange were prosecuted in the same trial, but with separate juries. (*Bruton v. United States* (1968) 391 U.S. 123; *People v. Aranda* (1965) 63 Cal.2d 518, superseded by statute on other grounds as stated in *People v. Fletcher* (1996) 13 Cal.4th 451, 465.)

Alfano's jury convicted him of first degree murder, kidnapping, first degree burglary (three counts), second degree robbery, and vehicle theft. (§§ 187, subd. (a), 189, 207, subd. (a), 459, 211; Veh. Code, § 10851, subd. (a).) The jury also found true the special circumstances that Alfano committed the murder during the course of a robbery or burglary. (§ 190.2, subd. (a)(17).)

Delange's jury convicted him of first degree murder, kidnapping, first degree burglary, second degree robbery, and vehicle theft. (§§ 187, subd. (a), 189, 207, subd. (a), 459, 211; Veh. Code, § 10851, subd. (a).) The jury did not find true the special circumstances of a murder committed during the course of a robbery or burglary.

The trial court sentenced Alfano to a determinate term of 10 years 8 months followed by life in prison without the possibility of parole. The court imposed an eight-year upper term for the kidnapping conviction and two consecutive 16-month terms for two of three burglary convictions. The court imposed a life term without the possibility of parole for the murder with special circumstances conviction. Concerning the robbery, remaining burglary, and vehicle theft convictions, the court imposed but stayed sentence pursuant to section 654. The court also imposed a $5,000 restitution fine, a $280 court operations assessment, and a $210 criminal conviction assessment, and it awarded Alfano

5

871 days of presentence custody credit. (§§ 1202.4, subd. (b), 1465.8, subd. (a); Gov. Code, § 70373.)

The trial court sentenced Delange to a prison term of 33 years to life, consisting of a 25-year-to-life term for the murder plus an eight-year upper term for the kidnapping conviction. Sentence for the burglary, robbery, and vehicle theft convictions was imposed but stayed pursuant to section 654. The court also imposed a $5,000 restitution fine, a $5,000 parole revocation restitution fine (suspended), a $280 court operations assessment, and a $150 criminal conviction assessment, and it awarded Delange 885 days of presentence custody credit. (§§ 1202.4, subd. (b), 1202.45, 1465.8, subd. (a); Gov. Code, § 70373.)

Alfano and Delange appeal and contend that the trial court erred by admitting evidence of their police interviews in violation of *Miranda*. They assert the error violates federal and California constitutional principles. Alfano raises the additional contentions that 1) the trial court abused its discretion by not staying sentence regarding the kidnapping conviction, and 2) the judgment must be modified to reflect a concurrent term regarding the second special circumstance finding. Delange joins the arguments of Alfano to the extent they benefit him. (Cal. Rules of Court, rule 8.200 (a)(5).)

*DISCUSSION*

I.

Alfano and Delange argue that the trial court committed prejudicial error, in violation of *Miranda* principles, by admitting evidence of their respective police interviews. Alfano and Delange fault the *Miranda* advisements because, as given, they did not specifically advise that the defendants could *consult* an attorney before and during questioning, and that an attorney could be *physically present* during the questioning. (*People v. Stitely* (2005) 35 Cal.4th 514, 535 ["[A] person undergoing a custodial interrogation must first be advised of his right to remain silent, to the presence of counsel, and to appointed counsel, if indigent"].)

Alfano and Delange also argue that the prosecution did not bear its burden of proof that they impliedly waived their *Miranda* rights.

6

At the inception of Alfano's and Delange's interviews, a police officer advised them pursuant to *Miranda*. With respect to the right to the presence of counsel, Alfano and Delange were advised: "You have a right to an attorney before and during questioning and at all times." The admonition did not state that the defendants had the right to "consult" or "speak with" the attorney or to have the attorney "physically present" during questioning.

*Miranda* warnings provide a procedural safeguard to protect an individual's Fifth and Fourteenth Amendment right against self-incrimination. (*Florida v. Powell* (2010) 559 U.S. 50, 59.) No "talismanic incantation" is necessary to satisfy *Miranda's* requirements. (*California v. Prysock* (1981) 453 U.S. 355, 359.) The advisement must "'reasonably "conve[y]"'" to a suspect that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. (*Powell*, at p. 60; *Miranda*, *supra*, 384 U.S. at p. 479.) The third warning must clearly inform the suspect of his "right to consult with a lawyer and to have the lawyer with him during interrogation." (*Miranda*, at p. 471.) The issue is whether the "words . . . used . . . communicated the same essential message [that *Miranda* requires]." (*Powell*, at p. 64.)

To establish a valid *Miranda* waiver, the prosecution bears the burden of establishing by a preponderance of evidence that the waiver was knowing, intelligent, and voluntary under the totality of circumstances of the interrogation. (*People v. Duff* (2014) 58 Cal.4th 527, 551.) On review of a denial of a suppression motion, we accept the trial court's resolution of disputed facts and inferences, and its evaluations of credibility, if supported by substantial evidence. (*Ibid.*) We apply our independent review to undisputed facts and facts properly found true by the trial court to determine whether the challenged statements were illegally obtained. (*Ibid.*)

*Miranda* requires that in order for a defendant's statements to be admissible against him, he must have knowingly and intelligently waived his right to remain silent and to the presence and assistance of counsel. (*People v. Sauceda-Contreras* (2012) 55

7

Cal.4th 203, 217.) "A suspect's expressed willingness to answer questions after acknowledging an understanding of his or her *Miranda* rights has itself been held sufficient to constitute an implied waiver of such rights." (*Id.* at pp. 218-219.) Thus, a waiver may be implied from the actions and words of the person interrogated. (*Berghuis v. Thompkins* (2010) 560 U.S. 370, 379.) Where the prosecution establishes that a *Miranda* warning was given and that it was understood by a suspect, his uncoerced statement establishes an implied waiver of his right to remain silent. (*Id.* at p. 384.)

The trial court properly determined that Alfano and Delange were adequately advised of their *Miranda* rights, waived those rights, and consented to their interviews.

The advisements given here reasonably conveyed that the defendants had a right to have counsel *present* before and during questioning. It would be unreasonable for a suspect to believe that, although he has appointed counsel before and during questioning and at all times, counsel cannot be present during the interview and must leave the interrogation room. (*People v. Wash* (1993) 6 Cal.4th 215, 236 ["Although the warning given to defendant here deviated from the standard form . . . , we are not persuaded . . . that the language was so ambiguous or confusing as to lead defendant to believe that counsel would be provided before questioning, and then summarily removed once questioning began"]; *People v. Valdivia* (1986) 180 Cal.App.3d 657, 663-664 [unreasonable for a suspect to believe attorney must leave the interrogation room during questioning when police advise a suspect he has a right to have an attorney before questioning].)

*United States v. Noti* (9th Cir. 1984) 731 F.2d 610, 614-615, does not compel a different result. *Noti* concluded that a *Miranda* warning was inadequate because police officers informed the suspect of his right to have the services of an attorney before, but not during, questioning. (*Id.* at p. 615.) Here, Alfano and Delange were advised that they had a right to an attorney "before and during questioning and at all times."

8

The trial court also did not err by finding that Alfano and Delange knowingly and voluntarily waived their *Miranda* rights. Alfano stated that he understood the *Miranda* procedures, and either stated "I understand" or "OK" to each of the four advisements. He then stated: "I'm willing to answer and be cool. I'm going to be cool for you. I'm not violent. So I'm saying I want to be cooperative. . . . But I want . . . a full detail of what's going on" Delange either stated "Yes," or nodded his head and stated "um-hum" to indicate he understood each of the four admonitions. The police officer then asked "is that good with you" if they "talk"[?] Delange again responded "Um-hum" and immediately answered police questions. Absent any evidence of coercion, this established an implied waiver of the right to remain silent. (*Berghuis v. Thompkins*, *supra*, 560 U.S. 370, 384 [statement of general rule].)

II.

Alfano contends that the trial court abused its discretion by failing to stay sentence, pursuant to section 654, regarding the kidnapping conviction. He asserts that there was but one single intent and objective for the kidnapping, burglary, and robbery convictions. Alfano argues that the court's implied finding of a separate intent and objective for the kidnapping conviction is not supported by substantial evidence.

Application of section 654 turns on defendant's intent and objective in violating multiple statutory provisions. (*People v. Britt* (2004) 32 Cal.4th 944, 951-952.) If the criminal offenses are incident to one objective, the defendant may be punished for only one offense. (*People v. Wynn* (2010) 184 Cal.App.4th 1210, 1214-1215.) The trial court has "broad latitude" to decide whether section 654 applies to a series of offenses, and its determination will be upheld if supported by substantial evidence. (*People v. DeVaughn* (2014) 227 Cal.App.4th 1092, 1113.)

A course of conduct divisible in time, although directed to one objective, may give rise to multiple punishments. (*People v. Beamon* (1973) 8 Cal.3d 625, 639, fn. 11.) "This is particularly so where the offenses are temporarily separated in such a way as to afford the defendant opportunity to reflect and to renew his or her intent before

9

committing the next one, thereby aggravating the violation of public security or policy already undertaken." (*People v. Gaio* (2000) 81 Cal.App.4th 919, 935.)

Sufficient evidence supports the trial court's implied finding that the kidnapping offense was divisible from the burglary and robbery offenses. Mangus was already unconscious and his feet bound when Alfano and Delange carried him to the side of his residence. This movement increased the danger to him and prevented the possibility that he would be rescued. Once at the side of the residence, Alfano and Delange committed further acts that resulted in Mangus's death. The court did not abuse its broad discretion in determining that section 654 did not apply to bar punishment for the kidnapping conviction.

### III.

Alfano asserts that the judgment must be modified to reflect a concurrent term regarding the second special circumstance finding.

The trial court did not err. True findings regarding special circumstances in a single murder count in a non-capital case result in a single indeterminate term of life without the possibility of parole. (*People v. Coyle* (2009) 178 Cal.App.4th 209, 219.)

We have considered and reject appellants' remaining arguments and subarguments as lacking merit.

The judgments are affirmed.

NOT TO BE PUBLISHED.


GILBERT, P. J.

We concur:


YEGAN, J.


PERREN, J.

10

Mark S. Arnold, Judge

Superior Court County of Los Angeles

_____


Dan Mrotek, under appointment by the Court of Appeal, for Defendant and Appellant Joshua David Alfano.

David L. Polsky, under appointment by the Court of Appeal, for Defendant and Appellant Morgan Tyler Delange

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson, Supervising Deputy Attorney General, Idan Ivri, Deputy Attorney General, for Plaintiff and Respondent.